Raymond MUZQUIZ et al.,
Plaintiffs-Appellants,

v.

CITY OF SAN ANTONIO et al.,
Defendants-Appellees.

No. 74–3177.

United States Court of Appeals,
Fifth Circuit.

Feb. 27, 1976.

Kermitt L. Waters, Las Vegas, Nev., for plaintiffs-appellants.

Harvey L. Hardy, San Antonio, Tex., for defendants-appellees.

Edgar A. Pfeil, Asst. City Atty., San Antonio, Tex., for City of San Antonio.

Before BROWN, Chief Judge, TUTTLE, WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, MORGAN, CLARK, RONEY, GEE and TJOFLAT, Circuit Judges.

DYER, Circuit Judge:

Former San Antonio policemen and firemen filed this class action against the

Pension Fund Board of Trustees and its individual members seeking damages and refunds of the amounts they obligatorily contributed to a pension fund during their employment but which they were barred from receiving after their separation under Article 6243f, § 19, Vernon's Texas Civil Statutes.[1] They raised a myriad of constitutional challenges to the no-refund provisions of the statute. The district court granted summary judgment for the defendants. A panel of this Court, finding that the no-refund provisions of Article 6243f were reasonable and constitutional, affirmed on the merits.[2]

■■■ The Court took this case en banc because it posed questions of jurisdictional importance in the ever burgeoning area of relief sought under 42 U.S.C.A. § 1983.[3] Two basic questions are presented. First, is the Board of Trustees of the Pension Fund a "person" and therefore suable under Section 1983? Second, is there jurisdiction over the individual members of the Board of Trustees to require them to cause payments from the fund to be made to the plaintiffs as restitution for the money paid into the fund?[4] We answer both questions in the negative.

## I.

In his dissent to the panel opinion Judge Godbold adopted the rationale underlying the grant of immunity to cities,

Monroe v. Pape, 1961, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492; Kenosha v. Bruno, 1973, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109, to the governmental entity here involved, the Board of Trustees of the Pension Fund, and concluded that the Board was not a "person" within the contemplation of Section 1983. We agree with the reasons undergirding this holding and without iterating them, we approve and adopt them as the opinion of the Court en banc.

## II.

With respect to the court's jurisdiction over the individual members of the Board of Trustees, again we agree with Judge Godbold's dissent, and his conclusion that there is a want of jurisdiction under Section 1983 to entertain plaintiffs' suit seeking an accounting, restitution and refunds, all of which "strik[e] directly for the pocket of the Pension Fund." Muzquiz at 1007.[5] We only wish to make clear the basis for this decision.

The panel opinion argues that it is incongruous to hold that the individual board members are "persons" within the meaning of § 1983 when some forms of relief, such as money damages, are sought, and at the same time to hold that the board members are not "persons" when other forms of relief, such as restitution, is sought. But this is not the basis of our decision. We do not hold

---

1. The Act provides in pertinent part:

    "[N]o member of either of said Departments or of said Fund shall ever be entitled to any refund from said Fund on account of the money deducted from that amount of their pay . . . which money is in itself declared to be public money, and the property of said Fund for the benefit of the members qualifying for benefits, and their beneficiaries."

2. The facts and issues are fully stated in the panel opinion, Muzquiz v. City of San Antonio, 5 Cir. 1975, 520 F.2d 993.

3. For like jurisdictional reasons the Court also considered en banc Warner v. Bd. of Tr. of Pol. Pen. Fund, etc., 5 Cir. 1975, 522 F.2d 1384, this day decided, 528 F.2d 505.

4. On oral argument plaintiffs withdrew their claims for damages.

5. As we noted earlier, on oral argument plaintiffs withdrew their demand for damages. If this were a suit seeking damages against the individual members of the Board for their alleged deprivations of a constitutional right, jurisdiction under § 1983 would exist. In that instance, plaintiffs would not be using the members of the Board as conduits to reach the Fund. Plaintiffs, of course, would have to prove their case and the board members could raise valid defenses. See O'Connor v. Donaldson, 1975, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396; Wood v. Strickland, 1975, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214.

that the status of the board members as "persons" is variable, dependent upon the relief sought. Rather, we hold that this is a suit not against the nominal defendants, the individual board members who are "persons", but instead is a suit against an unnamed, though very real, party defendant, the Pension Board itself, an entity which, as we have held previously, is not a "person". Therefore, § 1983 jurisdiction must fail.

In form, plaintiffs seek against the individual members of the board a mandatory injunction ordering the individual members to refund past contributions to the fund. However, in substance, this is nothing more than restitution against the fund itself. If we allowed this action to proceed, then the bar which has been created by the judicial interpretations of § 1983 would be effectively eliminated, for any action which seeks restitution against a "nonperson" may be framed in terms of a mandatory injunction against the officials responsible for the fund from which restitution is sought. The congressional intent which impels the "nonperson" limitation cannot be so lightly construed. The detailed analysis of Judge Godbold's dissent fully supports this position.

We take issue with only one aspect of that dissent. Judge Godbold concludes that the action against the individual members of the board should be dismissed insofar as it seeks monetary relief in the form of restitution. However, he also concludes that the action against the individual members is maintainable, insofar as it seeks declaratory and injunctive relief. The declaratory and injunctive relief sought is a declaration that Article 6243f is unconstitutional, and an injunction against its enforcement. Article 6243f is prohibitory in nature, barring refunds of monies previously paid into the fund. A declaration that it is unconstitutional, or an injunction against its enforcement, is in substance a determination of plaintiffs' entitlement to restitution from the fund itself. This determination, as we have held, is barred under § 1983 because of

the "nonperson" status of the fund's Board of Trustees.

Thus, we conclude that under the peculiar facts of this case, either a mandatory injunction directed against the individual members of the board, or injunctive and declaratory relief with respect to the statute is tantamount to a money judgment for restitution against the fund, an entity against which relief may not be directed under the court's § 1983 jurisdiction.

### III.

Since jurisdiction fails, we do not reach the merits.

Affirmed.

JOHN R. BROWN, Chief Judge (dissenting and concurring in part).

With respect to the meaning of "person" under § 1983, I concur in Judge Tuttle's opinion.

With respect to the remedy against individual members of the Board of Trustees in either their personal or official capacities, I concur in the result in Part II of Judge Dyer's opinion for the Court. I also concur in the opinion except that I reserve the question as to declaratory orders or injunctions which do not have the operative effect of directing restitution of the public funds.

TUTTLE, Circuit Judge, with whom WISDOM, GOLDBERG and MORGAN, Circuit Judges, join (dissenting).

With deference I dissent. Apparently because of its concern with the "ever burgeoning area of relief sought under 42 U.S.C.A. § 1983" the court seems to me to have whittled down the clear statutory grant of civil rights litigation under color of state law to little more than an empty promise. This is so because it is hard to conceive of a situation where a person acts under color of state law without being involved in a governmental type body.

It must be borne in mind that all we are doing is construing a statute. Section 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

The Supreme Court has held that a municipal corporation is not a "person" within the contemplation of this statute. *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). The Court has also held that a county is sufficiently like a municipality that it must also be accounted to be a non-person under this section. *Moor v. County of Alameda*, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973).

The Court has not held that a true "person" cannot be sued merely because by means of the suit the public fisc would be reached through the court's equity powers. Such a holding, as in my judgment is the decision of the court here, flies in the face of a literal reading of the language: "Every person, who, under color of any statute . . . shall be liable . . . in . . . [a] suit in equity, or other . . . proceeding for redress."

The error which, respectfully, I think the court has made here is that it treats § 1983 as a statute granting or creating some sort of immunity to a municipal corporation. It does nothing of the sort. It merely does not *include* a municipal corporation within the word "person." The clearest evidence of the Supreme Court's understanding of this basic fact

is the treatment it gave to the case of *Moor v. County of Alameda*. There the Court held that a suit could not be maintained against Alameda County in California because the County was not a "person." The Court did not stop there, however. It gave instead what might to some be considered a very liberal construction of the word "citizen" in the diversity jurisdiction clause [1] in order to permit the action against Alameda County to proceed on the theory that it was a citizen of the State of California.

In its use of the word "person" in § 1983 Congress did not intend for it to have an arcane or restricted meaning to be determined on the basis of the effect the created cause of action might have on the public moneys of a municipality. The majority writes a new definition which says a true live and breathing person who is a trustee of a fund created by a municipality is not a "person" because the Congressional policy is not to permit a suit to be maintained against the city itself.

This approach is even less understandable to me in light of a post-*Kenosha* case of the Supreme Court. In *Bradley v. School Board*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the Court permitted a suit under § 1983 to require the payment of an attorney's fee to be charged against the Board itself. I would suppose that no member of this Court would think this board of trustees of a pension fund would be less a "person" than the Board of Education of the City of Richmond. *See Davis v. Bd. of School Commissioners of Mobile County*, 526 F.2d 865 (5th Cir. 1976), in which a panel of this Court recognized the identical right for recovery of attorneys' fees against a board of education.

Pretermitting entirely the question whether the "Pension Fund Board of Trustees" would qualify as a person, I have no doubt but that the members of

---

1. "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000 . . . and is between—

(1) citizens of different States."
28 U.S.C. § 1332(a)(1).

this Board, sued in their individual capacities and as trustees, are persons. *See Burt v. Bd. of Trustees of Edgefield Co. School Dist.*, 521 F.2d 1201, 1205 (4th Cir. 1975). This is so even though, by suing them, the plaintiff if successful might be able, through equity, to get at the funds they are administering.[2] Such was the case when the Supreme Court carved out the exception of the Eleventh Amendment (a much more significant result, since the Constitution was involved, rather than the construction of a statute) in *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

I would hold that the trial court had jurisdiction of this case under § 1983.

THORNBERRY, Circuit Judge (concurring in part and dissenting in part).

I fully concur in Part I of Judge Dyer's opinion, agreeing with the conclusion that the San Antonio Pension Fund Board of Trustees is not a "person" subject to suit under 42 U.S.C. § 1983.

I find, however, that I am unable to concur in Part II of that opinion, which deals with the amenability of individual Board members to § 1983 suit. Judge Tuttle's indisputably correct observation that such individuals are "persons" under any reasonable definition of that term alone seems to me sufficient to conclude the issue. However certain the Court may be that an action is, "in reality", one directed at a governmental non-person, the fact is that the named defendants, and the ones against whom equitable relief would run, are persons. If Congress intended the statute to be construed other than in accordance with its natural and literal meaning, it could have given—or could now give—some objective basis for that conclusion. There is none.

Moreover, I seriously doubt the practical ability of the Courts to determine when an action falls within the ambit of the Court's decision in this case. In a decision that apparently is not overruled by the Court today, we held that individual government officials may be the object of injunctive relief under § 1983, even though that relief would have much the same effect as an injunction directed to the government body itself. *United Farmworkers of Fla. Housing Project, Inc. v. City of Delray Beach*, 493 F.2d 799 (5 Cir. 1974). Indeed, in prison cases and school cases, to name only a couple of examples, injunctive relief against governmental officials will as clearly require expenditures by those officials from the applicable government coffers as in the action before us. We have also upheld awards of equitable monetary relief directed against individual officials despite the fact that the money would ultimately be paid, through formal or informal indemnification arrangements, by the governmental "non-person" involved. *E. g., Gates v. Collier*, 489 F.2d 298 (5 Cir. 1973), *vacated and remanded on other grounds*, 522 F.2d 81 (5 Cir. 1975) (en banc); *Harkless v. Sweeny Ind. School Dist.*, 427 F.2d 319 (5 Cir. 1970).

I do not mean to suggest that it is impossible to draw distinctions between such cases and the one before us today. But I do contend that these cases foreclose a distinction based upon the relatively clear and logical basis of whether the relief sought will ultimately come from the individual who is the immediate subject of the applicable order or the governmental entity with which he is associated. Instead, the Courts will be forced to wrestle, as has this Court, with the vague and elusive question of whether an action is "in reality" or "in sub-

---

**2.** *See Incarcerated Men of Allen Co. Jail v. Fair*, 507 F.2d 281 (6th Cir. 1974), in which the court said:

"A federal court may, however, award *equitable* relief against local officials, even though it will have a severe impact on local governmental funds, without infringing the policies behind § 1983. *See Brown v. Board of Education*, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083

(1955); *Northcross v. Board of Education*, 489 F.2d 19 (6th Cir. 1973)." (Emphasis in original) 507 F.2d 288.

I see no valid distinction between the impact on local funds caused by jail reform suits, reinstatement and back pay suits, school desegregation suits and the impact on the pension fund that a restitutionary award here would cause.

stance" one against a person or a non-person. It seems to me that, at least as long as the earlier decisions mentioned remain good law, attempts to thwart indirect § 1983 actions against governmental "non-persons" will cause the Courts great difficulty and result in decisions that are lacking in both consistency and logic.

For these reasons, I dissent from Part II of the Court's opinions.

GODBOLD, Circuit Judge (concurring in part and dissenting in part).

I am unable to fully join in Judge Dyer's opinion despite the fact that it adopts in large part the dissenting opinion that I filed to the panel opinion. I disagree with the holding with respect to declaratory and injunctive relief against the individual Trustees. I now see this issue more clearly, and hopefully can discuss it more clearly, than in my earlier dissent. To the extent that anything said in the original dissent is broader than what is here said, I recede from it.

*Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), proscribed § 1983 suits against cities for damages. It did not decide whether its proscription applied to forms of relief other than damages. *City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), answered that question by holding that in *a suit against a city* the *Monroe* rule applies to injunctive and declaratory relief sought against the city. *Kenosha* was not concerned with whether injunctive and declaratory relief is available under § 1983 against public officers. Since *Kenosha*, both the Supreme Court and this court have approved injunctions issued against public officers under § 1983. *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (school officials); *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (prison officials); *United Farmworkers v. City of Delray Beach*, 493 F.2d 799 (CA 5, 1974) (municipal officials).

Is injunctive and declaratory relief against public officials, ordinarily available under § 1983, unavailable if the relief will have some financial impact upon the public fisc? The answer to this question lies in recognizing that *Monroe*, and its roots in the Civil Rights Acts, protect the municipal treasury against *damages*. Also, of course, injunctive and declaratory relief against a public officer is not available under § 1983 if it is a sham device to reach into the public treasury in pursuit of a claim for damages. But dollar impact on the public treasury resulting from bona fide equitable or declaratory relief that requires public officers to make restitution out of the public treasury is another matter. *Monroe* did not deal with such claims. *Kenosha* did not broaden the policy implemented by *Monroe* into a broader policy of insulating public funds from the impact of non-damage claims asserted under § 1983.

Arguably a city treasury does not have full title to funds that it possesses but in equity or under principles of restitution is bound to turn over to others property entitled to them. Thus it might be said that such funds are not part of the public fisc at all. But one need not embark on the intricacies of property concepts. More fundamentally, *Monroe* protects the treasury from damages in the narrow sense, not from non-damage claims.

We recognized and followed this distinction in *Harkless v. Sweeny Ind. School Dist.*, 427 F.2d 319 (CA 5, 1970), cert. denied, 400 U.S. 991, 91 S.Ct. 451, 27 L.Ed.2d 439 (1971). In Part II of that case we held that *Monroe* did not prohibit § 1983 suits against public officials for equitable relief, and in Part III we held that turning over to improperly discharged teachers their back pay was an integral part of the equitable remedy of reinstatement. These parts of *Harkless* remain viable, unaffected by *Kenosha*.[1]

The ultimate result in this case is an overreaction by the Court en banc. The plaintiffs sought restitution, assorted eq-

---

1. Part I of *Harkless*, in which we held that a suit could be maintained against the School District for equitable relief has, of course, been supplanted by *Kenosha*. *See Adkins v. Duval County School Board*, 511 F.2d 690, 692 (CA 5, 1975).

uitable relief, and damages of almost every kind and variety within the ingenuity of a legal draftsman. The panel opinion, ignoring the damage claims, characterized the suit as an "action seeking a refund" and upheld jurisdiction, making no distinction between suits seeking damages from the public treasury and suits not for damages that nevertheless might have a dollar impact on the fisc. This left open the possibility that in future cases judgments for damages might be entered against individual city officers and sought to be enforced against public treasuries. To close off this end run around *Monroe* the court en banc, while recognizing that the plaintiffs now disclaim damages, has proceeded to give to *Monroe* wider scope than that case was intended to have.

In summary, I concur in the holding that the Pension Fund is not a person and in the implicit holding that § 1983 proscribes suit against the individual Trustees for damages. I dissent from the holding that § 1983 also proscribes suit against the individual officers for restitution and other equitable relief not in the nature of damages.