**Clyde L. GRIMM, Plaintiff-Appellant,**

v.

**Jerome C. CATES, Individually, and in his Official Capacity as President of Southwest Texas State University, et al., Defendants-Appellees.**

**No. 75–1309.**

United States Court of Appeals, Fifth Circuit.

June 7, 1976.

Warren Weir, San Antonio, Tex., for plaintiff-appellant.

Carol Oppenheimer, Austin, Tex., amicus curiae for Texas Assoc. of College Teachers.

Mark Yudof, Austin, Tex., amicus curiae.

John L. Hill, Atty. Gen., Frank C. Cooksey, William C. Bednar, Jr., Asst. Attys. Gen., Austin, Tex., for defendants-appellees.

Before THORNBERRY and AINSWORTH, Circuit Judges, and HOFFMAN *, District Judge.

THORNBERRY, Circuit Judge:

Appellant Clyde L. Grimm, Jr., brought suit under 42 U.S.C. §§ 1983 and 1985 alleging that his constitutional rights under the First and Fourteenth Amendments were abridged when he was issued a terminal contract by Southwest Texas State University (SWTSU) on June 28, 1971 for the 1971–1972 academic year. The United States District Court for the Western District of Texas held that Dr. Grimm did not have a property interest within the meaning of *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) and *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), which was entitled to the protection of the Due Process Clause of the Fourteenth Amendment, and that he was therefore not entitled to a hearing or statement of reasons for his dismissal. The district court also held that Dr. Grimm failed to prove by a preponderance of the evidence that he was discharged for exercising First Amendment rights. In view of the previous two rulings, the district court declined to address Dr. Grimm's claim that the hearings granted to him by SWTSU were constitutionally deficient.

After securing his Ph.D. from the University of Illinois in 1963, appellant Grimm taught for one year at the University of Illinois, three years at Texas Tech Universi-

---

* District Judge of the Eastern District of Virginia, sitting by designation.

ty, and one year at Sam Houston State University. Dr. Grimm was hired as an associate professor by Southwest Texas State University for the academic year of 1968–1969. He completed three nine-month teaching contracts at SWTSU for the academic years 1968–1969, prior to receiving terminal notice in May of 1971 and being issued a terminal contract in June of 1971.

Dr. Grimm contends (1) that the district court incorrectly held that he did not have de facto tenure under the practice and policy prevailing at SWTSU at that time; (2) that he was denied due process of law by the termination of his employment without showing cause; and (3) that even if he did not have tenure at the time that he was dismissed, he was still entitled to a hearing before a faculty committee to determine whether the issuance of a terminal contract to him constituted a violation of his academic freedom.

## I.

■ As the district court noted in its memorandum opinion and order, the Supreme Court in *Board of Regents of State Colleges v. Roth, supra,* ". . . held that a non-tenured teacher had no 'property' interest in his reemployment and thus was not entitled to a due process hearing prior to his termination. To have a 'property' interest in a benefit, a person must have a legitimate claim of entitlement to it and not a mere unilateral expectation of it." District Court's Memorandum Opinion and Order, Record at 227, *citing Board of Regents of State Colleges v. Roth, supra,* 408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 560. The property interest claimed by Dr. Grimm is tenure. In a decision rendered on the same day that *Roth* was handed down, the Supreme Court in *Perry v. Sindermann, supra,* acknowledged that it is possible for a teacher to obtain de facto tenure even though tenure has never been formally conferred upon him by the administration. Since the administration at SWTSU never formally conferred tenure upon Dr. Grimm, the question that this court must answer is whether some action by the State gave rise to a legitimate claim of entitlement to continued employment with SWTSU. Dr. Grimm contends that such a claim of entitlement exists by virtue of a policy statement set forth in a Coordinating Board Statement of October, 1967, which was adopted by the Board of Regents in 1968 and included in the 1970 edition of SWTSU's Faculty Handbook.[1] In essence, the relevant portion of the Coordinating Board Statement relied upon by Dr. Grimm states that the probationary period for a faculty member shall not exceed seven years, including "appropriate" full-time service in other institutions of higher education.[2] Dr. Grimm believes that since he

---

1. The same policy statement of the Coordinating Board was involved in *Perry v. Sindermann,* 408 U.S. at 601 and footnote 6, 92 S.Ct. at 2699, 33 L.Ed.2d at 579.

2. The following portion of the Coordinating Board's policy statement on tenure is included in SWTSU's 1970 edition of the Faculty Handbook:

A. *Tenure*

Tenure means assurance to an experienced faculty member that he may expect to continue in his academic positions unless adequate cause for dismissal is demonstrated in a fair hearing, following established procedures of due process.

A specific system of faculty tenure undergirds the integrity of each academic institution. In the Texas public colleges and universities, this tenure system should have these components:

(1) Beginning with appointment to the rank of full-time instructor or a higher rank, the probationary period for a faculty member shall not exceed seven years, including within this period appropriate full-time service in all institutions of higher education. This is subject to the provision that when, after a term of probationary service of more than three years in one or more institutions, a faculty member is employed by another institution, it may be agreed in writing that his new appointment is for a probationary period of not more than four years (even though thereby the person's total probationary period in the academic profession is extended beyond the normal maximum of seven years.)

(2) Notice of nonreappointment, or of intention not to reappoint a faculty member, should be given in writing in accord with the following standards: (a) Not later than March 1 of the first academic year of proba-

had four years teaching experience at Texas Institutions and one year teaching experience at the University of Illinois prior to his employment by SWTSU, the fourth contract at SWTSU conferred de facto tenure upon him. Dr. Grimm contends that (1) the three year *local* probationary period expired with the conclusion of the 1970–1971 academic year; and (2) the seven year *total* probationary period expired with the conclusion of the 1969–1970 academic year. After examining the facts and circumstances surrounding Dr. Grimm's employment at SWTSU, the district court concluded that he had no legitimate claim to tenure, and that he therefore had no right under the Due Process Clause of the Fourteenth Amendment to a statement of reasons and a hearing before college officials to review their decision not to retain him. The basis for the district court's decision appears to be (1) that the Coordinating Board's statement, which was included in the 1970 edi-

tion of the *Faculty Handbook,* was ignored until 1971; and (2) the practice at SWTSU when Dr. Grimm was hired in 1968 was to exclude *all* years of prior service at other universities.[3]

In order to hold for Dr. Grimm, we would have to rule the district court's findings that the practice and policy of SWTSU was to exclude all prior service and that the relevant portion of the Coordinating Board statement was not followed until 1971 are clearly erroneous. Fed.R.Civ.P. 52(a). We decline to do so. Dr. Grimm's own expert, Dr. Everett Swinney, testified that the Coordinating Board statement was ignored,[4] and that excluding this portion of the handbook, Dr. Grimm did not have an entitlement to tenure at the time he received a terminal contract from the administration.[5] Likewise, there was testimony at trial by the former president and vice-president of Academic Affairs at SWTSU that the practice at SWTSU when Dr. Grimm was first

tionary service, if the appointment expires at the end of that year; or, if a one-year appointment terminates during an academic year, at least three months in advance of its termination. (b) Not later than December 15 of the second year of probationary service, if the appointment expires at the end of that year; or, if an initial two-year appointment terminates during an academic year, at least six months in advance of its termination. (c) At least twelve months before the expiration of a probationary appointment after two or more years in the institution.

(3) Adequate cause for dismissal for a faculty member with tenure may be established by demonstrating professional incompetence, *moral turpitude, or gross neglect* of professional responsibilities.

Cases of *bona fide* financial emergency, or the phasing out of institutional programs requiring reduction of faculty, may permit exceptions of tenure regulations in unusual circumstances.

*Faculty Handbook,* pp. 48–49 (1970 ed.).

3. "The Court thus concludes that under the practice and policy at Southwest Texas, Grimm is not entitled to tenure. The policy at Southwest Texas has never been to accept five years of prior service, which Grimm needs to establish his seven years of probationary teaching. Additionally the policy, as set out in each faculty handbook during Grimm's teaching was and is to require three years of teaching at Southwest Texas before notice of termination is required. Grimm thus received proper notice of

his termination. Grimm's testimony concerning his expectation of retention so long as he did his job is of no probative value since a mere expectancy of retention is not a 'property' interest under the Fourteenth Amendment." District Court's Memorandum and Order, Record at 229.

4. The following testimony by Dr. Swinney was the basis of the district court's finding that the Coordinating Board's statement was ignored: "The difficulty was that it (the Coordinating Board statement) was little noted. Everybody was so concerned with Ph.D. The Coordinating Board's statement when approved initially was circulating in mimeograph form and when I tried to get a copy of this third edition of the Handbook, I could not find one on the campus and had to write directly to the Coordinating Board to get it. The difficulty here was that we had a rule which had been approved by the Board but was little understood. The full effect of what in fact had been adopted back in 1968 did not become apparent until sometime in 19— the academic year of '70 or '71, when this prior service rule was rediscovered and this. . . ." Record at 104.

5. Dr. Swinney also testified that absent the Coordinating Board statement, Dr. Grimm had no claim to tenure: "In terms of the main body of the Handbook, excluding the Coordinating Board's statement, he would not have had tenure." Record at 102.

employed by the University was not to credit any prior service towards probationary service.[6] In 1971, SWTSU changed its policy and accepted up to three years prior experience toward the seven year probationary period, but still required a three year probationary period of teaching at SWTSU with notice of termination after the third year. District Court's Memorandum and Order, Record at 229.[7] Even under the three year rule, Dr. Grimm falls one year short of the seven years of probationary teaching required by the Coordinating Board statement. We therefore conclude that under the policy and practice at SWTSU from the Fall of 1968 to the Spring of 1971, Dr. Grimm had no legitimate claim of entitlement to tenure. Absent a claim of entitlement to tenure, Dr. Grimm possessed no property right which was entitled to the procedural protection of the Fourteenth Amendment. *Board of Regents of State Colleges v. Roth, supra.*

## II.

The essence of Dr. Grimm's second contention is that the failure of the administration to conform to the administrative procedure set forth in the Faculty Handbook for nonrenewal of contracts on nontenured teachers alleging an infringement of academic freedom amounted to a violation of due process of law.[8]

6. Dr. Billy Mac Jones, President of SWTSU at the time in question testified as follows:

Q: My question was, how many years of prior service could be counted at Southwest Texas State University towards the maximum period of probationary service?

Dr. Jones: None.

Record at 277.

Dr. Jones' testimony was consistent with the following testimony by Dr. Joe H. Wilson, Vice-President of Academic Affairs and Dean of SWTSU:

Q: All right, in the academic year of 1968, what was your understanding of the operating policy of the university concerning the number of years, if any, that could be counted for probationary service that had been served at other institutions?

Dr. Wilson: None.

Record at 265.

7. The district court's finding in this regard is also supported by the testimony of Dr. Jones and Dr. Wilson. Record at 266, 277.

8. The procedure that Dr. Grimm alludes to is in the 1970 edition of SWTSU's Faculty Handbook:

B. *Faculty Dismissals*

Proper dismissal procedures, established in anticipation of their being needed, are essential to an effective tenure system. In the Texas public college and university system, these procedures should have the following components:

(1) These dismissal procedures apply to a faculty member who has tenure, or whose term appointment has not expired, or who alleges a *prima facie* case of a violation of academic freedom in the non-renewal of his contract. If he *has* tenure or an unexpired appointment extending beyond the period of the proposed dismissal, the burden of proof is upon the administration to show adequate cause why he should be dismissed. If he does *not* have tenure, but contends that the non-renewal of his contract constitutes a violation of his academic freedom, the burden of proof is upon the faculty member. If a faculty member on probationary appointment alleges that the non-renewal of his contract constitutes a violation of academic freedom, he may request that his allegations be given preliminary consideration by a faculty committee. The committee shall then recommend whether a hearing is warranted.

(2) The institution's procedure in dismissal cases described in (1) above should include, first, a *bona fide* effort to achieve a satisfactory resolution of difficulties through preliminary inquiry, discussion, or confidential mediation.

Should these efforts fail, presentation of reasonably detailed and formally written charges should be made to the concerned faculty member. Presentation of such charges shall provide for (a) a written response to the charges by the faculty member, if he wishes a hearing; (b) opportunity by the faculty member to exercise his right to be represented by counsel of his choosing, to have a hearing before a regularly elected faculty committee, to confront and cross-examine witnesses, to know the name and statement of a witness who for extraordinary reasons does not appear at the hearing, to respond orally to charges made against him, to have findings and recommendations made on each of the charges, and to be given a copy of a complete transcript of the hearing, including the findings of the faculty committee; (c) a review of the case, if essential, by an appropriate reviewing body—the review to include the findings and recommendations of the hearing committee, the opportunity of the faculty member and university representative for oral argument, the return of the proceeding to the hearing committee's reconsidered

■ It is clear that the exercise of First Amendment rights may not be the basis for discharging a non-tenured teacher unless the exercise of such rights clearly overbalances the teacher's usefulness as an instructor. *Ferguson v. Thomas*, 430 F.2d 852, 859 (5th Cir. 1970).

■ The district court in the instant case recognized the possibility that Dr. Grimm's First Amendment claim had not been heard; consequently, the issue was fully explored during trial. The district court concluded that the testimony offered at trial did not prove by a preponderance of the evidence that Dr. Grimm was dismissed for reasons related to the exercise of First Amendment rights. District Court's Memorandum Opinion and Order, Record at 231. In view of testimony by President Jones[9] and Dean Randolph,[10] a former chapter president of the A.A.U.P., that Dr. Grimm's activities in the A.A.U.P. were not considered in their recommendation to terminate his employment with SWTSU, we do not think the district court's finding in this regard is clearly erroneous. Since Dr. Grimm was not terminated for reasons related to the exercise of First Amendment rights and was not stigmatized by his termination, we agree with the district court's holding that it is unnecessary to examine the adequacy of the hearings granted to

him by the administration at SWTSU. *Kaprelian v. Texas Women's University*, 509 F.2d 133, 139–140 (5 Cir. 1975).

AFFIRMED.

findings and recommendations, and the rendering of á final decision (which should be written in the case in which the hearing committee is overruled).

(3) If the faculty appointment is to be terminated, the faculty member, except in cases of moral turpitude, will receive his salary at least for one year or for the period of notice to which he is entitled under these regulations. He will be continued in his duties for that period unless at the discretion of the institution he be granted a leave of absence with pay.

9. The following exchange occurred during the direct examination of President Jones:

Q: All right sir. Now, on the basis of these or any other contacts with Plaintiff Grimm in his capacity as AAUP chapter president, did any of those contacts play any part in the formulation of your recommendation to the Board of Regents that Plaintiff Grimm be awarded a terminal contract?

President Jones: No.

Record at 275.

10. Dean Randolph also denied taking Dr. Grimm's A.A.U.P. activities into consideration in formulating his recommendation:

Q: All right, sir. Were you aware at the time that you made your recommendation that Dr. Grimm had been the local chapter president of the A.A.U.P.?

Dean Randolph: I am sure I was.

Q: Did any of his activities as chapter president of the A.A.U.P., or in connection with the A.A.U.P. at any other time, play any role in your recommendation that he not be granted tenure?

Dean Randolph: Not at all. May I elaborate or stop?

Q: Yes, except our time is limited, please.

Dean Randolph: I was just going to say I knew he was president. I had no idea of really what kind of activities he did; it wouldn't have made any difference. I had been a chapter president of A.A.U.P. myself.

Record at 229.