**Raul GUERRA, Antonio Guerra, Roberto Alvarez and Alberto Alvarez, Jr., Plaintiffs,**

v.

**ROMA INDEPENDENT SCHOOL DISTRICT, Baldemar Chapa, Martin Canales, Jose Salinas, Hector Salinas, Virgilio H. Guerra, Clarence Shelton, Ramiro Barrera and J. C. Guerra, Defendants.**

Civ. A. No. 74–B–18.

United States District Court,
S. D. Texas,
Brownsville Division.

April 29, 1977.

Robert E. Hall, Dixie, Wolf & Hall, Houston, Tex., for plaintiffs.

Harvey L. Hardy, San Antonio, Tex., for defendant J. C. Guerra.

Grant Cook, Reynolds, Allen & Cook, Houston, Tex. and Paul Y. Cunningham, Jr., Carinhas & Cunningham, Brownsville, Tex., for other defendants.

## OPINION [1]

GEE, Circuit Judge.

Four public school teachers who were all employed by the Roma Independent School District in the school year 1971–72 bring this suit alleging that action taken by the district's Board of Trustees on May 17, 1972, violated their first amendment rights of association and their fourteenth amendment rights to due process of law. The defendants include the Roma Independent School District; the individual board members, the superintendent of schools, and the high school principal, all in their official and individual capacities; and an influential private citizen named J. C. Guerra. Plaintiffs Raul Guerra and Roberto Alvarez were teaching under three-year contracts which were to expire August 31, 1972; each had been teaching in Roma for ten years. On May 17, 1972, the school board failed to renew their contracts. On the same date, the school board voted to extend probationary one-year contracts to Alberto Alvarez and Antonio Guerra, teachers with eight years' experience in the school district who had previously enjoyed three-year contracts.

Plaintiffs allege that this action of the school board was taken in retribution for their support of or association with Arnulfo Guerra, an unsuccessful candidate in a recent school board election. Plaintiffs characterize Arnulfo Guerra as the focus of opposition to J. C. Guerra, former mayor, former school board president and reputed leader of the Old Party, a political faction which dominates city and school board politics in Roma, Texas. Plaintiffs allege that J. C. Guerra, although not a public official, was head of the Old Party and acted as the puppeteer who controlled the strings of the school board. In this role, according to plaintiffs, J. C. Guerra directed the personnel action taken on May 17, 1972, both to retaliate against these individual teachers and to intimidate other school personnel from swaying in their allegiance to his Old Party in future elections. Additionally, plaintiffs assert that apart from formal tenure their long years of service and the established procedures of the school district gave them a reasonable expectation that their three-year contracts would be renewed and that they were deprived of this property interest without due process.

The school board defendants deny that their system of rehiring teachers constitutes or creates de facto tenure, deny that any unconstitutional considerations entered into their personnel decisions on May 17, 1972, and deny that J. C. Guerra influenced their deliberations in any way. J. C. Guerra maintains that at all times in question he was a private citizen who in no way acted under color of law as required for a § 1983 cause of action.

### Jurisdiction

Plaintiffs assert a cause of action under 42 U.S.C. §§ 1981, 1983 and 1985, relying on jurisdiction under 28 U.S.C. §§ 1331 and 1343(3). We find no cause of action under § 1985, *McLellan v. Mississippi Power & Light Co.*, 545 F.2d 919 (5th Cir. 1977) (en banc) (racial, or perhaps class-based, bias must be alleged under § 1985); nor have plaintiffs alleged a cause of action under § 1981, *Campbell v. Gadsden County District School Board*, 534 F.2d 650 (5th Cir. 1976) (§ 1981 is restricted to claims alleging racial discrimination). The question of § 1343(3) jurisdiction for the § 1983 claims is more complicated. In *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the Supreme Court held that municipalities are not "persons" liable for damages under § 1983. *City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), extended that holding by eliminating the distinction between equitable relief and liability for damages; a municipality is not a person for either purpose under § 1983. Because of its similarity to a municipality, a Texas school district is not a person for any purpose under § 1983. *Sterzing v. Fort Bend Independent School*

---

1. The court's findings of fact and conclusions of law are set forth in the following opinion as F.R.Civ.P. 52(a) permits.

*District,* 496 F.2d 92, 93 n. 2 (5th Cir. 1974); *accord Adkins v. Duval County School Board,* 511 F.2d 690 (5th Cir. 1975) (a Florida county school board is not a person for § 1983 purposes). But plaintiffs here have sued two school officials and the individual members of the school board in their official, as well as individual capacities. Defendants urge that the decisions in *Muzquiz v. City of San Antonio,* 528 F.2d 499 (5th Cir. 1976) (en banc), and its companion case, *Warner v. Board of Trustees of Police Pension Fund,* 528 F.2d 505 (5th Cir. 1976) (en banc), prohibit orders to individuals to act in their official capacities when the governmental entity cannot be sued directly under § 1983. This is too expansive a reading of *Muzquiz,* which found no § 1983 jurisdiction against individual members of a public board for injunctive or declaratory relief *tantamount to a money judgment for restitution.* The court specifically noted that the holding was limited by the "peculiar facts of this case." 528 F.2d at 501. *Muzquiz* did not *sub silentio* overrule the Fifth Circuit's holding in *United Farmworkers of Florida Housing Project, Inc. v. City of Delray Beach,* 493 F.2d 799 (5th Cir. 1974), that § 1983 jurisdiction for equitable relief will lie against individual members in their official capacities. Several post-*Muzquiz* decisions of the Fifth Circuit have recognized § 1983 jurisdiction against individual members of a municipal board or school board in their official capacities when declaratory and injunctive relief is sought. *Campbell v. Gadsden County District School Board, supra* at 655 n. 10 (dictum); *McGill v. Parsons,* 532 F.2d 484, 485–86 n. 1 (5th Cir. 1976); *Thurston v. Dekle,* 531 F.2d 1264 (5th Cir. 1976). Indeed, were defendants' view of *Muzquiz* to prevail, injunctive relief could never be granted in school desegregation suits or other familiar actions against municipal bodies because individual members in their individual capacities would be powerless to take official action. Unconstitutional official action would be beyond the power of the courts to cor-

rect. This would defeat the whole purpose of § 1983, which was designed to create just such a remedy against persons acting under color of state law. I therefore conclude that § 1983 jurisdiction exists over the individual trustees and school officials in their official and individual capacities. Equitable relief in the form of reinstatement or expunging school board records can be had against the board members only in their official capacities as trustees or school officials, whereas a suit for money damages will lie against the same defendants only in their individual capacities. Section 1983 jurisdiction does not reach J. C. Guerra, for plaintiffs have failed to establish any state action on his part, individually or in concert with the other defendants.

Finally, I conclude that plaintiffs Raul Guerra and Roberto Alvarez, in seeking reinstatement for positions the annual salaries of which approximate $9,000, plus damages and statutorily authorized attorneys' fees, have met the $10,000 jurisdictional amount for causes of action under 28 U.S.C. § 1331 claiming denial of constitutional rights, aside from any enabling statute such as § 1983. *Reeves v. City of Jackson, Mississippi,* 532 F.2d 491 (5th Cir. 1976). In recognizing jurisdiction under § 1331, I need not predetermine whether the conduct complained of violates the constitution or the validity of the defendants' immunity defense.

### Due Process

Plaintiffs assert that they had a "legitimate claim of entitlement" to a renewal of their three-year teaching contracts in May 1972, a property right which could not be taken away without due process of law. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1973). Defendants respond that there has never been any formal or de facto tenure system in the Roma Independent School District, so that plaintiffs had no more than a subjective expectation of being rehired for three years.[2]

---

2. Plaintiffs do not allege that any liberty interest has been violated, and, indeed, *Roth* seems to foreclose such a contention on the facts

before me. "Mere proof, for example, that his record of nonretention in one job taken alone, might make him somewhat less attractive to

"[W]hether a particular teacher in a particular context has any right to such administrative hearing hinges on a question of state law." *Perry v. Sindermann,* 408 U.S. 593, 604, 92 S.Ct. 2694, 2717, 33 L.Ed.2d 570 (1972) (Burger, C. J., concurring). Plaintiffs held no property interest in the renewal of their respective contracts under the Texas continuing contract law, Texas Education Code §§ 13.101–13.116 (1972), because that optional statutory system had not been adopted by the Roma Independent School District. Plaintiffs held no property interest in continued employment under their written contracts because by their terms these expired August 31, 1972. But *Perry v. Sindermann* requires that we further inquire if the conduct or policies of the school board created an *implied* contractual right to re-employment.

Plaintiffs assert that the following statement of policy set forth in the Teachers' Handbook gave them a claim of entitlement as defined in *Roth* :

> All professional personnel with the exception of the superintendent and business manager shall serve under one-year contracts for a probationary period of three years. *Three years* (sic) *contracts will be issued to all professional personnel who have completed the probationary period. This extended contract will be issued only to those personnel recommended by the department principal and superintendent.* All others will continue to receive one-year contracts until termination of employment or until they are recommended for extended contracts.

(emphasis added). Relying on this statement, Antonio Guerra and Alberto Alvarez assert that the board of trustees violated its own policies by extending probationary one-year contracts to teachers who had completed the probationary period, had previously worked under three-year contracts, and had been recommended by both principal and superintendent. Raul Guerra and Roberto Alvarez argue that they suffered an even greater deprivation by being offered no contracts at all. Their reasoning, based on the stated policy, is appealing, but we find that other federal courts faced with the dismissal of public school teachers not protected by the continuing contract law have examined Texas law in vain for any implied property right in the renewal of employment. *Doscher v. Seminole Common Consolidated School District No. 1, Gaines County, Texas,* 377 F.Supp. 1166 (N.D.Tex. 1974); *Moore v. Knowles,* 377 F.Supp. 302 (N.D.Tex.1974), aff'd, 512 F.2d 72 (5th Cir. 1975). Indeed, courts of the State of Texas have definitively held that a school district which fails to adopt the continuing contract law may *not* adopt its own tenure plan granting automatic contract renewal except for cause because this violates § 23.28 of the Texas Education Code which decrees that independent school districts may not offer teaching contracts for a term of more than three or five years, depending on the size of the district:

> The tenure policy of the School District that plaintiff says was in effect, be it expressed, *de facto* or implied, would be contra to Article 2781 [now § 23.28, Texas Education Code], and void, as it would have generated an automatic teacher contract renewal procedure, the effect of which would have resulted in a term that was not limited by three years but by the failure of the teacher to render satisfactory service.

*Hix v. Tuloso-Midway Independent School District,* 489 S.W.2d 706, 710 (Tex.Civ.App. 1972), *citing Fromen v. Goose Creek Independent School District,* 148 S.W.2d 460 (Tex.Civ.App.1941, writ dism'd, judg. corr).[3]

---

some other employers would hardly establish the kind of foreclosure of opportunities amounting to a deprivation of 'liberty'. " 408 U.S. at 574 n. 13, 92 S.Ct. at 2708. *Accord Zimmerer v. Spencer,* 485 F.2d 176 (5th Cir. 1973).

3. *Zimmerer v. Spencer,* 485 F.2d 176 (5th Cir. 1973), can be distinguished in that it dealt with the discharge of a teacher from a Texas junior college which was not subject to § 23.28 of the Texas Education Code. The same distinction obtains in *Perry v. Sindermann, supra.* In

In the absence of a property right implied from state law, plaintiffs were entitled to no due process of law by the Roma Independent School District.

### First Amendment Violation

Plaintiffs allege that the school board's failure to rehire Roberto Alvarez and Raul Guerra and the issuance of one-year probationary contracts to Alberto Alvarez and Antonio Guerra, experienced teachers who had long since completed their probationary periods, were actions taken in retaliation for their association with Arnulfo Guerra, an unsuccessful candidate in the most recent school board election. A teacher's right of free association is closely akin to freedom of speech, *Shelton v. Tucker*, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960), and the nonrenewal of even a nontenured teacher may not be predicated upon an exercise of first amendment rights. *Perry v. Sindermann, supra; Grimm v. Cates*, 532 F.2d 1034 (5th Cir. 1976); *Ferguson v. Thomas*, 430 F.2d 852 (5th Cir. 1970). Defense counsel is correct in insisting that the teachers have the burden of proving any unconstitutional considerations behind the school board's action. *Megill v. Board of Regents of State of Florida*, 541 F.2d 1073 (5th Cir. 1976); *Fluker v. Alabama State Board of Education*, 441 F.2d 201 (5th Cir. 1971). But defendants are incorrect in asserting that plaintiffs prevail only upon a showing that an impermissible reason was the *sole* basis for the board's personnel action. "A decision to terminate employment of a teacher which is only *partially* in retaliation for the exercise of a constitutional right is unlawful." *Gray v. Union County Intermediate Education District*, 520 F.2d 803, 806 (9th Cir. 1975); *see also Megill v. Board of Regents of State of Florida, supra; Simard v. Board of Education of Town of Groton*, 473 F.2d 988 (2d Cir. 1973); *Fluker v. Alabama State Board of Educa-*

*tion, supra*. This court's duty is to determine whether the teachers' exercise of their rights of free political association "was a significant basis" for the board's action. *Stapp v. Avoyelles Parish School Board*, 545 F.2d 527, 534 (5th Cir. 1977).

Sifting the evidence developed at this four-day trial, I find that the only credible explanation for the nonrenewal and/or demotion of these four teachers was their relationship with Arnulfo Guerra, a political opponent of three recently elected board members and of their Old Party leader, J. C. Guerra. Although plaintiffs' evidence is entirely circumstantial, the circumstances all point to political retaliation. The school board election of April 1, 1972, was hotly contested.[4] There was sufficient evidence introduced at trial to establish bad blood between J. C. Guerra and Arnulfo Guerra (no relationship to each other). Roberto Alvarez testified that in early 1972, J. C. Guerra threatened revenge on those who joined Arnulfo Guerra in his withdrawal from the Old Party. Defendants admitted that a patronage system existed in the Roma Independent School District whereby nonprofessional personnel received or lost school jobs in accordance with their political favor or disfavor. Alberto Alvarez testified that he would not support Arnulfo Guerra publicly for fear of jeopardizing his standing in the school system.

The individual trustees cannot reconstruct their deliberations concerning these four teachers: some say there was a discussion and a vote; others deny either voting or discussing any of the plaintiffs on the evening of May 17, 1972. Some say there were two lists, one of teachers to be hired, another of teachers not being renewed; others insist there was only one list, and certain names were scratched off. No one can recall who made the motion not to rehire Roberto Alvarez and Raul Guerra;

*Roane v. Callisburg Ind. School Dist.*, 511 F.2d 633 (5th Cir. 1975), a property interest was implied for a specific term of two years under the contract.

**4.** The results certified by the board of trustees for the three vacancies on the board were as

follows: Virgilio H. Guerra, 1,240 votes; Francisco Garza, 1,173 votes; Jose A. Salinas, 1,162 votes; Arnulfo Guerra, 1,055 votes; Cleotilde Pena, 1,040 votes; and Lalita Gonzales, 1,026 votes.

no one can recall who suggested that Alberto Alvarez and Antonio Guerra would receive one-year contracts rather than the customary three-year contracts. The minutes contain only the following cryptic sentence: "There came for consideration, the employment of professional personnel and the following were employed," followed by the list of the teachers to receive three-year contracts and those to receive one-year contracts. Paul Guerra and Roberto Alvarez were not listed; Antonio Guerra and Alberto Alvarez were listed as receiving one-year contracts. All four teachers in question were praised by their supervisors; both their principal and their superintendent recommended that their three-year contracts be renewed. No dissent from these evaluations or recommendations came in evidence. Yet without any contrary recommendation, without any discussion or any vote, those recommendations were not followed. Why? The silence surrounding the trustees' deliberations is deafening. A decision not to rehire one of Arnulfo Guerra's brothers, to return another brother to probationary status after eight years of satisfactory teaching, and to afford similar treatment to two other teachers linked with Arnulfo was clearly one of moment in the small Roma community. A review of the minutes of the board of trustees for the previous five years reveals that a decision not to rehire a teacher was customarily accompanied by a motion to remove that individual's name, a discussion of the reasons and a vote. Yet on May 17, 1972, the minutes reveal no motion, no discussion and no vote. I find the absence of any record in these minutes of deliberations on these actions significant.

The school trustees, in testimony, accused Raul Guerra of drinking coffee off campus during his conference period, and yet the testimony was that the school principal and other teachers often drank coffee at the same place and that Raul Guerra was never reprimanded for his coffee-drinking practices. The trustees allege that Roberto Al-

varez' contract was not renewed because he was unable to communicate with the coordinator of federal programs for whom he conducted some testing. Yet the evidence is clear that this rift existed long before Roberto Alvarez was elevated from his teaching position to his role as counselor, and that the conflict was not troublesome enough to bother the superintendent of schools who commended Roberto Alvarez and recommended a renewal of his contract. Finally, the trustees assert that Alberto Alvarez and Antonio Guerra, despite their exemplary teaching records, were placed on probationary status because one board member's son reported that they were "agitators" who were not on good terms with the other teachers. Alternatively, one trustee simply stated that these two teachers were given one-year contracts because it was in the best interest of the school. This is all.

The court finds these reasons an incredible basis for unfavorable action upon the employment contracts of four demonstrably able and praiseworthy teachers whose records were without blemish and who enjoyed the full support of their principal and superintendent. There are too many fish in this milk for me to believe it has not been watered. I find the reasons given pretexts, and their insubstantiality adds weight to the allegations that these teachers suffered political retaliation. *Robison v. Wichita Falls and North Texas Community Action Corp.*, 507 F.2d 245, 255 (5th Cir. 1975); *Cook County College Teachers Union v. Byrd*, 456 F.2d 882, 888 (7th Cir. 1972); *Fluker v. Alabama State Board of Education, supra.* This inference of constitutionally impermissible considerations, added to the other circumstantial evidence, is enough to meet plaintiffs' burden of proof that they were penalized for their political associations in violation of the first amendment, *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and I so find.[4a]

---

**4a.** In an excess of caution and to avoid the necessity of a remand and partial retrial should I be mistaken as to jurisdiction of the court over J. C. Guerra, I address the merits of plain-

tiffs' claims against him. A want of any credible proper reasons, plus the presence of an obvious improper one, for these otherwise-inexplicable actions of the school board suffices

*Relief*

Plaintiffs Antonio Guerra and Alberto Alvarez are entitled to judgment directing the defendants in their official capacities to expunge from the records all evidence that these teachers were returned to probationary status in 1972 or anytime thereafter,[5] and to an injunction against further actions by defendants that condition these teachers' employment on a restriction of their political beliefs or associations, *Arthur v. Nyquist*, 415 F.Supp. 904, 969 (W.D.N.Y.1976), at least until their actions reach such a pitch as to destroy their effectiveness as teachers. *Ferguson v. Thomas*, 430 F.2d 852 (5th Cir. 1970). I find that this is not at present the case.

Plaintiffs Raul Guerra and Roberto Alvarez seek reinstatement and damages. The individual trustees can grant the former only in their official capacities and are subject to the latter only in their individual capacities. Five years after the complained-of nonrenewal, both of these plaintiffs are employed in neighboring school districts, and I am reluctant to disturb present personnel assignments of these various school districts. However, the Fifth Circuit has announced that where a teacher's first amendment rights have been violated the court may not refrain from reinstating him merely because reinstatement at a late date would revive old antagonisms. *Sterzing v. Fort Bend Independent School District*, 496 F.2d 92, 93 (5th Cir. 1974). I therefore direct that both Roberto Alvarez and Raul Guerra be offered reinstatement in their former positions with the Roma Independent School District for the school year 1977–78, and I further direct the school board to refrain from conditioning these teachers' employment on any restrictions of their political beliefs or associations.

Monetary damages may not be assessed against the school board members in their official capacities. *Muzquiz, supra*. Although back pay as an adjunct to the equitable relief of reinstatement has been distinguished from monetary damages in this circuit and in other circuits,[6] that distinction is no longer valid in this circuit after *Muzquiz*. See *Thurston v. Dekle*, 531 F.2d 1264 (5th Cir. 1976).[7] But plaintiffs have sued the individual board members in their individual capacities as well as in their official capacities. Defendants assert their good-faith immunity as a defense to liability for damages. *Wood v. Strickland* teaches that school board members enjoy a qualified immunity from liability for damages under § 1983 "such that public school officials understand that action taken in the good-faith fulfillment of their responsibilities and within the bounds of reason under all the circumstances will not be punished and that they need not exercise their discretion with undue timidity." 420 U.S. 308, 321, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975). The Supreme Court goes on to hold that an individual member is not immune from liability for damages under § 1983 "if he knew or reasonably should have known

to base my finding that the improper reason was at least the actions' partial basis, but any determination that J. C. Guerra was involved in the matter would necessarily rest on speculation and suspicion. I am, therefore, unable to make any such finding and, the plaintiffs' burden of proof on this issue not having been carried, I find that he did not so act.

5. The individual trustees named as defendants in this lawsuit were serving as trustees of the Roma Independent School District in May 1972. For purposes of the injunctive relief in their official capacities, the present members of the school board are automatically substituted. F.R.Civ.P. 25(d). *See Arthur v. Nyquist*, 415 F.Supp. 904, 975 (W.D.N.Y.1976).

6. *Thomas v. Ward*, 529 F.2d 916 (4th Cir. 1975); *Burt v. Board of Trustees of Edgefield County School Board*, 521 F.2d 1201 (4th Cir. 1975); *Roane v. Callisburg Independent School Dist.*, 511 F.2d 633 (5th Cir. 1975); *Harkless v. Sweeny Independent School Dist.*, 427 F.2d 319 (5th Cir. 1970).

7. "In *Muzquiz* we refused to allow § 1983 suits against the individual members of a municipal board or agency for restitution or damages where the practical effect was to use those defendants as conduits to the city treasury. The lower court's award of back pay to class members, therefore, must be reversed for lack of subject matter jurisdiction." 531 F.2d at 1269.

that the action he took within his sphere of official responsibility would violate the constitutional rights of the student affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the student." *Id.* at 322, 95 S.Ct. at 1001.[8] Defendants argue that the *Wood v. Strickland* opinion also holds that they cannot be made responsible for predicting the future course of constitutional law and that the decision in *Elrod v. Burns* outlawing political patronage in public employment came three years after the complained-of personnel decisions in 1972. If plaintiffs were nonteachers, the trustees might plead that conditioning employment on political affiliation was not known to be unconstitutional in May 1972. But plaintiffs are teachers, and we have a long judicial history in our country of jealously protecting the free-exercise rights of teachers. *Perry v. Sindermann*, supra; *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Keyishian v. Board of Regents*, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); *Shelton v. Tucker*, supra. The trustees' failure to rehire these teachers because of their political associations was done in disregard of the teachers' clearly established constitutional rights and therefore cannot reasonably be characterized as action taken in good faith. We therefore hold that the individual trustees have no immunity defense to liability for damages.

 Raul Guerra is presently employed by the Rio Grande City Independent School District which pays him a base salary equivalent to what he was earning in Roma in 1971–72 but does not afford him employment in an extended-hour program or a summer program which he had in Roma when he left. This supplemental salary amounted to approximately $1,500 annually, so that Raul Guerra is entitled to damages from the individual trustees, jointly and severally, in the amount of $6,000 as compensatory relief for losses suffered over the past four years.[9]

 Roberto Alvarez' base salary in the Hebbronville Independent School District is $400 per year greater than his base salary in Roma in 1971–72, but he, too, is deprived of employment in a federal program that supplemented his Roma salary by $700 annually. He is thus entitled to $300 per year damages for the past five years, or an amount of $1,500, from the individual board members, jointly and severally.

Although Antonio Guerra and Alberto Alvarez have proved their first amendment rights were violated by the actions of the school board, they have not proved that they suffered any monetary damages, and so none are awarded. Defendant J. C. Guerra is liable for no damages, since plaintiffs failed to prove any state action on his part.

Finally, we address the question of attorneys' fees. On October 19, 1976, 42 U.S.C. § 1988 was amended to provide for attorneys' fees to the prevailing party in § 1983

---

8. Although the *Wood v. Strickland* decision was made in the specific context of school discipline of students, I am convinced that the responsibility of the school board for nonrenewal of teachers is similar enough to require application of the same standard of reviewing the individual members' reasonable good faith.

9. Although five years have passed since plaintiff's contract was not renewed in 1972, he has been teaching in Rio Grande City only four years. In the summer of 1972, Raul Guerra did not seek other employment for the school year 1972–73 in the false hope that the Roma trustees would have a change of heart before the fall of 1972. There was no reasonable basis for plaintiff's expectation that he would be reinstated to his teaching position in Roma for 1972–73. His failure to seek comparable employment, which by his own admission he could have secured, amounts to a failure to mitigate damages for that year. When the fall came and he was not recalled by the Roma trustees, plaintiff helped publish a newspaper which he jointly owned with his brother Arnulfo. He states that he received little or no salary but was given a one-third interest in the enterprise for his efforts; the value of the newspaper was estimated to be $20,000–$25,000. Because of the indefiniteness of Raul Guerra's monetary damages in 1972–73 and because of his failure to mitigate his damages by seeking another teaching position at a time when he could have obtained one, the court awards no monetary damages for that year.

actions. A purpose of the amendment was to respond to the Supreme Court's holding in *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), that attorneys' fees could no longer be awarded on a "private-attorney general" theory absent specific congressional authorization. The amendment adopted the *Newman v. Piggie Park Enterprises, Inc.* standard that attorneys' fees should ordinarily be granted unless special circumstances would render such an award unjust, 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968), and was made applicable to cases pending at the time of its enactment. The amendment also incorporated the guidelines of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), for determining reasonable attorneys' fees.

Under the amended statute, plaintiffs are entitled to recover reasonable attorneys' fees for the successful prosecution of this action. The final question before us is who should pay the attorneys' fees—the individual members in their official capacities or in their individual capacities. Attorneys' fees have been assessed against a school board in this circuit prior to the *Muzquiz* decision. *See Davis v. Board of School Commissioners of Mobile County*, 526 F.2d 865 (5th Cir. 1976). *Muzquiz*, in its narrowest reading, held that under § 1983 injunctive relief which is "tantamount to a money judgment for restitution" may not lie against individual members of a governmental entity in their official capacities. Does this holding outlaw the assessing of attorneys' fees that would ultimately be paid out of school board funds? This question was specifically left open by the Fifth Circuit in *Abbott v. Thetford*, 529 F.2d 695, 701 (5th Cir. 1976). One district court in this circuit has held that *Muzquiz* does indeed prevent any award of attorneys' fees that would ultimately be paid by a governmental entity. *Schrank v. Bliss*, 412 F.Supp. 28 (M.D.Fla.1976). This court is

unable to harmonize this result with the Supreme Court's holding in *Bradley v. School Board of City of Richmond*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), that the district court in its discretion might allow reasonable attorneys' fees for a § 1983 desegregation action by applying 20 U.S.C. § 1617 (1970 ed. Supp. II) (authorizing attorneys' fees in school desegregation cases) to cases pending at the time of the statute's enactment. The district court in *Bradley* specifically levied attorneys' fees against the school board. 53 F.R.D. 28 (E.D.Va.1971). Relying on this recent authority that attorneys' fees specifically authorized by Congress in a § 1983 action may be awarded even though the fees are to be paid out of school board funds, I answer the question left open in *Abbott v. Thetford* by holding that attorneys' fees are not the kind of monetary damages or restitution which *Muzquiz* excludes from § 1983 jurisdiction against individual members in their official capacities.[10]

Plaintiffs have proved 270 attorneys' hours expended in this matter, which I find reasonable in view of its legal and factual complexity. Of these, I determine that forty were expended in court or in matters so court-related as to justify a court-related hourly compensation. Considering counsel's experience and ability, both of which are very considerable, I determine this rate to be Fifty-five Dollars ($55.00) per hour. Out-of-court time I will compensate at Forty Dollars ($40.00) per hour. These considerations produce an attorneys' fee award of Eleven Thousand Four Hundred Dollars ($11,400.00). Reasonable expenses of Three Thousand Five Hundred Fifty-eight Dollars ($3,558.00) incurred in presenting the action were established by proof, and I award these as well.

---

**10.** The court is aware of language to the contrary in *Campbell v. Gadsden County Dist. School Board, supra* at 655 n. 10, but finds that

discussion to be dictum in a case where the court awarded attorneys' fees against a school board under § 1981.