**Malvin P. SARTIN and Bessie Mae Vaughn, Plaintiffs,**

v.

**CITY OF COLUMBUS UTILITIES COMMISSION et al., Defendants.**

**No. EC 76–31–K.**

United States District Court, N. D. Mississippi, E. D.

Sept. 27, 1976.

John L. Maxey, II, Jackson, Miss., for plaintiffs.

W. E. Bearden, Jr., Taylor B. Smith, Columbus, Miss., for defendants.

MEMORANDUM OPINION

KEADY, Chief Judge.

Invoking federal jurisdiction under 28 U.S.C. § 1343(3) for causes of action based upon 42 U.S.C. § 1983, and under 28 U.S.C. § 1331 for actions arising under the United States Constitution, plaintiffs bring this action charging that they were deprived of their Fourteenth Amendment due process rights when their employment with the

Utilities Commission of the City of Columbus, Mississippi, was terminated without prior notice and an opportunity to be heard. Plaintiffs also claim that they were terminated because of their age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. As a pendent claim, plaintiffs allege that their termination was a breach by the Commission of an implied contract to employ plaintiffs until they reached retirement age. Plaintiffs request reinstatement to their former positions, an award of back pay, and accrual of retirement benefits as if their employment had not been terminated. Actual damages are sought under the § 1983 and Fourteenth Amendment claims, and punitive damages are sought by the pendent claim. Plaintiffs and defendants—the Commission and the Commissioners, sued in their official and individual capacities—have filed cross-motions for summary judgment with supporting affidavits, depositions, exhibits, and legal memoranda.

The evidentiary materials disclose that plaintiff Malvin P. Sartin was for about 13 years employed by the Commission as general manager of the Light and Water Department. He had no written contract of employment. Plaintiff Bessie Mae Vaughn was employed for approximately six months as Sartin's secretary under an oral agreement. On September 23, 1975, Sartin received notice from the Commission of his immediate termination as general manager. No reasons for his termination were given at that time or at any time since. Prior to the Commission's action, Sartin received no notice or opportunity to be heard. At the time of discharge, Sartin was 55 years of age. On either September 24 or 25, 1975, Vaughn was terminated by Lee Proffitt, acting general manager of the Light and Water Department. The reason given for her termination was lack of work, in that since she was employed as Sartin's secretary and he had been discharged, her services were no longer needed. Vaughn, who was then 55 years of age, was given no prior notice that she was to be terminated, or opportunity to be heard prior to her termination.

## I. THE DUE PROCESS CLAIM

 The Commission contends that as a municipal corporation, it is not a "person" within the meaning of 42 U.S.C. § 1983, and therefore is not amenable to suit under that statute. Plaintiffs concede this point, recognizing the rule of *City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). Relying on *Muzquiz v. City of San Antonio,* 528 F.2d 499 (5 Cir. 1976), the individual Commissioners similarly contend that in their official capacities they are not subject to suit under § 1983. *Muzquiz,* however, holds only that officers may not be sued in their official capacities for injunctive relief pursuant to § 1983 where the relief, if granted, would necessarily result in the payment of retrospective damages out of the city treasury. In other words, *Muzquiz* precludes a plaintiff from indirectly suing municipal officials for monetary damages under § 1983 when, under *City of Kenosha,* he cannot hold the municipality liable therefor. Thus, no jurisdiction exists under § 1983 to award back pay against the Commissioners in their official capacities. Plaintiffs, however, seek reinstatement of employment and an injunction prohibiting the defendants from discharging them without due process prior notice and hearing. Such relief does not utilize public officers as a conduit to city funds, but instead compels officers to take actions necessary to correct their prior unconstitutional conduct; and any monetary benefit as may flow from such equitable relief is of an incidental, prospective nature, and not as restitution for past damages. Thus, we have § 1983 jurisdiction to order that the Commissioners reinstate plaintiffs, *Harkless v. Sweeny Independent School District,* 427 F.2d 319 (5 Cir. 1970), and to enjoin their discharge, absent compliance with due process safeguards, *Thurston v. Dekle,* 531 F.2d 1264 (5 Cir. 1976).

 For procedural due process to become requisite, there must be a threatened deprivation of liberty or property subject to the protection of the Fourteenth Amendment. In the context of public employ-

ment, a protected "liberty interest" is implicated in a termination only "[w]here a person's good name, reputation, honor, or integrity is at stake," *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515, 519 (1971), as where an employee's termination is based on charges of dishonesty or immorality, "that might seriously damage his standing and associations in his community," *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548, 558 (1972), or where the employee's termination "imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities," *id.,* 408 U.S. at 573, 92 S.Ct. at 2707, 33 L.Ed.2d at 559. It is obvious that no invasion of such a liberty interest occurred to plaintiffs, for no charges were made against them damaging to their reputation or standing in the community, and after their termination, they "remain[ed] as free as before to seek another [job]," *id.,* 408 U.S. at 575, 92 S.Ct. at 2708, 33 L.Ed.2d at 560. Public employment is a "property interest" protected by procedural due process where the employee has a legitimate claim of entitlement to it, *id.,* 408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561. "Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law," *id.; see Thurston v. Dekle,* supra. These general rules apply, of course, to municipal employment, and we must therefore look to the statute or ordinance governing such employment, as well as relevant state court decisions, to determine whether a protected property interest exists. *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).

■ Miss.Code Ann. § 21–27–17 (1972) delineates the powers and duties of a municipal utilities commission, providing in applicable part as follows: "It shall have the right to fix the salaries and term of office of all employees and . . . shall have the right to discharge employees when found inefficient or for other good cause." Virtually identical language is found in the ordinances of the City of Columbus, Code Art. II, § 32–46. Defendants contend that since the Commission has the authority to fix the term of office of all employees, and since it has not set any definite terms, all employees serve at its will and pleasure. Defendants cite numerous cases to the effect that public employees who serve at the will and pleasure of the employing authority may be terminated without notice or hearing. The principles enunciated by these cases are aptly summarized in 56 Am. Jur.2d, Municipal Corporations, § 333, p. 1917:

> Where an appointed municipal or county officer does not hold office for a fixed term *or under expressed or implied restrictions as to the manner of his removal from office,* it is common for the court to express his tenure as being at the "pleasure" of the appointing power. If a municipal or county office is in fact held at the pleasure of the appointing power, there seems to be no doubt that removal may be accomplished without notice or hearing. The general conclusion to be drawn from the cases is, that if a municipal or county officer does not hold office for a fixed term *and there is no constitutional or statutory provision from which it appears, or may be inferred, that notice and hearing are required before removing him from office,* the power of removal may be exercised at any time without notice or hearing. (Emphasis added).

Although it is indisputable that plaintiffs had no fixed term of employment, defendants' argument that plaintiffs were therefore entitled to no pre-termination notice and hearing completely ignores the quoted portions of the state statute and the municipal ordinance which provide that the Commission may discharge employees "found inefficient or for other good cause." The precise issue for our determination is whether this portion of the statute and ordinance creates a property interest protected by procedural due process. The Fifth Circuit Court of Appeals recently has stated flatly that "[c]ity employment which allows termination only for cause creates a

constitutionally protectable property interest. Once created, the employment property interest may not be taken away without due process." *Thurston v. Dekle,* supra, at 1272. Moreover, *In re Bishop,* 211 Miss. 518, 52 So.2d 18 (1951), the only analogous Mississippi decision, reached a like conclusion. *Bishop,* involved the termination by a circuit judge of a deputy sheriff pursuant to Miss.Code Ann. § 4235 (1942). That statute authorized sheriffs to appoint deputies "and to remove them at pleasure," and further provided that "[t]he circuit court shall have power to remove such deputies . . . whenever in its opinion the public interest will be subserved thereby." The Mississippi Court held that the latter portion of the statute necessarily implied that a circuit judge could remove a deputy only for cause. Noting that "[a]ll the cases seem to hold that where the removal can only be for cause, the officer has a right to notice and an opportunity to disprove the charges," 52 So.2d at 20, the court contrasted the sheriff's power to remove "at pleasure" with the judge's power to remove for cause, and held that notice and hearing were required on the facts of the case.[1]

> Had the Legislature intended that the power of the court for removal should be "at pleasure", it could easily have said so. The fact that it did not do so—that it used different language in vesting the power—is evidence that the power of the court is not the same as that of the sheriffs. 52 So.2d at 20.

Similarly, had the legislature intended to vest utility commissions with the power to move its employees at pleasure, it surely could have said so.[2] Since employees of municipal utility commissions have by statute been granted a property interest in employment protected by the Fourteenth Amendment, discharge of such employees without prior notice and an opportunity to be heard is constitutionally impermissible. Plaintiffs Sartin and Vaughn are therefore entitled to reinstatement to their former employment with the City of Columbus Utilities Commission. Further, equity requires that plaintiffs be accorded all benefits incident to their employment which would have inured except for their impermissible discharge.

Although damages, back pay or other monetary relief cannot be recovered under § 1983 from the Commission or the Commissioners, in their official capacity, this does not foreclose either § 1983 liability of the Commissioners as individuals, or § 1331 liability of the Commission and the Commissioners in their official capacities under the Fourteenth Amendment.

■ Before individual liability may be imposed on the Commissioners under § 1983, it must be shown that they are not entitled to the immunity afforded public officers for their actions taken in good faith. *Sheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). These cases hold that a public officer is immune from § 1983 liability if the officer acted in subjective good faith, i. e., in his own mind he believed that he was acting properly, and if the actions were objectively reasonable when measured against settled constitutional precedent at the time they were taken. We do not believe that the Commissioners' discharge of Sartin and Vaughn without notice and hearing was objectively unreasonable when viewed in light of due process precedent

---

1. The *Bishop* court also pointed out that as a general principle the power to remove at pleasure and without a hearing is greater in an appointing authority than in a removing authority not having appointment powers. This, however, does not appear crucial to the court's distinction between the power to remove at pleasure and the power to remove for cause, especially where, as here, there exists an express limitation to remove only for cause.

2. For an example of clear legislative intent that municipal employees are to serve at the will and pleasure of the governing authority, so that no pre-termination notice and hearing are required by the due process clause, see Miss. Code Ann. § 21–3–5 (1972), which provides in part: "All officers and employees so appointed shall hold office at the pleasure of the governing authorities and may be discharged by such governing authorities at any time, either with or without cause."

prevailing at that time. *Compare Bishop v. Wood*, supra *with Thurston v. Dekle*, supra. Whether the Commissioners acted in subjective good faith, or whether they "took the action with the malicious intention to cause a deprivation of constitutional rights or other injury" to plaintiffs is a question of fact which must be decided after evidentiary hearing, and it is therefore not a proper subject for summary judgment.

■ No bar, of course, to monetary award against public agencies or officers, in *their official capacity*, may be interposed to a due process claim based directly on the Fourteenth Amendment since the "person" limitation of § 1983 is inapplicable. *See Hander v. San Jacinto Junior College*, 522 F.2d 204 (5 Cir. 1975); *Roane v. Callisburg Independent School District*, 511 F.2d 633 (5 Cir. 1975); *Collum v. Yurkovich*, 409 F.Supp. 557 (N.D.Ill.1975); *Lombard v. Board of Education of City of New York*, 407 F.Supp. 1166 (E.D.N.Y.1976); *Panzarella v. Boyle*, 406 F.Supp. 787 (D.R.I.1975). Even though the Fourteenth Amendment claim may provide an alternative basis for personal liability of the Commissioners, *Patterson v. City of Chester*, 389 F.Supp. 1093 (E.D.Pa.1975), we perceive no reason why the qualified immunity to § 1983 liability afforded by *Scheuer* and *Wood* should not be equally applicable to the individual defendants.

■ We reject the Commission's contention that it is immune from suit in an action arising under the Constitution of the United States merely because state law does not expressly grant it the power to sue and be sued. The Commission cites as authority *Storey v. Rhodes*, 178 Miss. 776, 174 So. 560 (1937). *Storey* holds that under Mississippi law, trustees of a school district have no authority to sue other than that expressly granted by statute, stating that: "It is the settled rule in this state that public bodies or subdivisions of the state have only such powers as are conferred on them by law, and, unless the statute gives the power to sue and be sued, such boards or bodies have not such power," 174 So. at 561. The Com-

mission's argument, however, overlooks the fact that:

> Plaintiffs allege infringement of rights constitutional in origin . . . . The means of redress are Federal, and vindication is being sought in a Federal forum. Under these circumstances, the *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 doctrine is wholly inapplicable; and all elements of the action are governed by Federal law. In an action to enforce Federal rights it is Federal law—not state common law—that controls such critical matters as the scope of relief, just as it controls the maintainability of the action against a defense of immunity or expiration with plaintiff's death. Where there is an infringement of constitutional rights the Federal courts must be guided by the need for an effective remedy, and are not constrained by the "state law" of the jurisdiction where the acts took place.

*Sullivan v. Murphy*, 156 U.S.App.D.C. 28, 478 F.2d 938, 972, cert. denied 414 U.S. 880, 94 S.Ct. 162, 38 L.Ed.2d 125 (1973). The vagaries of state law may not be determinative of the availability of a federal forum to a person deprived by a municipal governmental entity of rights guaranteed by the Constitution of the United States. Indeed, the Fifth Circuit has at least implicitly recognized that a public agency's capacity to be sued on federal claims is not governed by state law. The power of a school board to sue and be sued is the same today as it was at the time of the *Storey* decision. See Miss.Code Ann. § 37–7–303 (1972). Notwithstanding the fact that school boards in this state have no general power to sue and be sued, the Fifth Circuit has consistently allowed actions against them based on violation of federally-created rights. *E. g., Adams v. Rankin County Board of Education*, 524 F.2d 928 (5 Cir. 1975); *Andrews v. Drew Municipal Separate School District*, 507 F.2d 611 (5 Cir. 1975). Moreover, we believe the power to sue may fairly be inferred from the grant of power to the Commission. In *Storey*, the general rule that "public bodies . . . have only such powers as are conferred on them by law" is derived from *Fernwood Rural Sepa-*

*rate School District v. Universal Rural Separate School District*, 170 Miss. 35, 154 So. 268 (1934). *Fernwood* upheld the appellant's contention that governmental subdivisions exercising governmental functions can neither sue nor be sued in the absence of express or implied statutory authorization.

Unlike the school boards involved in *Storey* and *Fernwood*, the Commission is wholly engaged in the exercise of proprietary rather than governmental functions. *See* 56 Am.Jur.2d, Municipal Corporations § 200 (1971). A grant of municipal powers of a proprietary nature is not necessarily subject to as strict construction as a grant of power relating to governmental activities, id. § 195. In any event, it is reasonable to conclude that the power to sue may be easily inferred from the grant of extensive powers to the Commission by § 21–27–17. The Commission is vested with exclusive control and management of the utility system and all incidental property; it is granted the power to contract for all materials and supplies to be used in the operation of the system, and the power to insure all property used in the operation of the systems, and to purchase liability insurance. It is further empowered to make and collect rates for services and facilities. We have no difficulties in concluding the power to sue and be sued is a necessary concomitant to the effective exercise of the several powers explicitly conferred upon the Commission.

## II. THE AGE DISCRIMINATION CLAIM

We next address the claims of Sartin and Vaughn that their discharge by the Commission contravened the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. In seeking summary judgment, the Com-

missioners would dismiss this claim because plaintiffs failed to comply with the notice provisions of the Act.[3] Plaintiffs gave timely notice to the Secretary of Labor of their intent "to bring suit against the City of Columbus Utilities Commission, Columbus, Mississippi," and the Secretary notified the Commission that plaintiffs had served notice of their intent to sue. The Commissioners argue that since they were not individually named in either plaintiffs' notice or the Secretary's notice, the terms of the statute have not been fulfilled so as to enable plaintiffs to maintain this action against them as individuals; they do not deny that they as Commissioners received notice of plaintiffs' intent to sue.

An examination of the Act and its purposes leads to the conclusion that plaintiffs' notice is sufficient to permit suit against the Commissioners personally. Since the Age Discrimination Act is remedial and humanitarian in nature, it should be liberally construed. *Moses v. Falstaff Brewing Corp.*, 525 F.2d 92 (8 Cir. 1975); *Woodford v. Kinney Shoe Corp.*, 369 F.Supp. 911 (N.D.Ga.1973).

The persons making complaints to the Department [of Labor] will in the most part not be lawyers; they should not be compelled to adhere to strict rules of pleading merely to preserve their right to come to court to enforce their right to be free of discrimination [in] employment because of their age. If they are to be able to enforce the Age Discrimination Act, their complaints should be construed not narrowly and technically, but broadly and liberally.

*Woodford*, supra, at 915. Furthermore, the purpose of the statutory requirements as to notice and time is to provide the Secretary and the parties charged with discrimination an opportunity to settle disputes nonjudi-

---

**3.** 29 U.S.C. § 626(d):

No civil action may be commenced by any individual under this section until the individual has given the Secretary [of Labor] not less than sixty days' notice of an intent to file such action. Such notice shall be filed—

(1) within one hundred and eighty days after the alleged unlawful practice occurred . . .

Upon receiving a notice of intent to sue, the Secretary shall promptly notify *all persons named therein* as prospective defendants in the action . . . . (Emphasis added).

cially through conciliation while the disputes are fresh. *Moses v. Falstaff Brewing Corp.*, supra; *Edwards v. Kaiser Aluminum & Chemical Sales, Inc.*, 515 F.2d 1195 (5 Cir. 1975); *Burgett v. Cudahy Co.*, 361 F.Supp. 617 (D.Kan.1973). The Commission consists of no more than its members and since it could act to conciliate the dispute only through its members, who did receive notice of plaintiffs' intent to sue, the purposes of the statutory notice requirement have been satisfied. Thus, the motion of the Commissioners in their individual capacity to dismiss the age discrimination claim, for lack of notice, must be denied. However, the merits of the age discrimination claims are not ripe for summary disposition and their validity cannot be presently determined.

### III. THE PENDENT CLAIM

Plaintiffs' last contention is that their discharge was a breach of contract by the Commission because of an implied promise to employ them until they reached retirement age. Ordinarily, an agreement for "permanent employment," absent some consideration over and beyond the rendition of personal services by an employee, is terminable at the will of either party. *Rape v. Mobile & O. R. Co.*, 136 Miss. 38, 100 So. 585 (1924); 53 Am.Jur.2d, Master and Servant, § 32, (1970). Plaintiffs do not allege an express agreement was made for their employment until age of retirement, but contend such a term was implied from the existence of a retirement program. To survive under Mississippi law, plaintiffs' pendent claim, which is one of a novel nature, would have to be supported by evidence distinguishing *Rape*, in some manner such as was recognized by the State Supreme Court in *McGlohn v. Gulf & S. I. R. R.*, 179 Miss. 396, 174 So. 250, 253–254 (1937).

Since the evidentiary materials deemed necessary to determine this issue have not been fully or adequately developed, this claim is also reserved for evidentiary hearing. Factual issues are necessarily involved in the disposition of the state law claim.

In sum, we grant plaintiffs' partial summary judgment for reinstatement of their positions pending due process notice and hearing, back pay, and accrual of benefits incident to continued employment. We deny plaintiffs any further relief by summary judgment. We also deny all motions for summary judgment in favor of defendants.

An order will be entered accordingly.