**Kirk QUINN**

v.

**BOWMAR PUBLISHING COMPANY et al.**

**Civ. No. Y-77-161.**

United States District Court, D. Maryland.

Jan. 25, 1978.

L. Robert Evans, Towson, Md., for plaintiff.

Monte Fried, Baltimore, Md., for defendants.

## MEMORANDUM AND ORDER

JOSEPH H. YOUNG, District Judge.

The plaintiff, Kirk Quinn, suing under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., alleges that, upon the recommendation of the two individual defendants, Robert J. Jachino and George Campbell, President and National Sales Manager, respectively, of Bowmar Publishing Company, the defendant Bowmar Publishing Company willfully and wrongfully discharged the plaintiff because of his age, in violation of 29 U.S.C. § 623(a)(1) and (3). He requests reinstatement to his former position of Sales Representative, back pay and lost benefits with 6% interest per annum, an additional, equal amount as liquidated damages, one million dollars punitive damages, restoration of his pension and retirement rights, attorney's fees and costs, and such other legal and equitable relief as may be appropriate to effectuate the purposes of the ADEA. In addition, the plaintiff demands a jury trial on all issues triable as of right by a jury.

The defendants move to dismiss on five grounds: 1) 12(b)(3), Fed.R.Civ.Proc., for improper venue; 2) 12(b)(1) or (6) Fed.R. Civ.Proc., for failure to exhaust state remedies as required by the ADEA, 29 U.S.C. § 633; 3) 12(b)(6) Fed.R.Civ.Proc., dismissal of the claim for punitive damages as not recoverable under the ADEA; 4) 12(b)(2) Fed.R.Civ.Proc., dismissal of the claims against the two individual defendants for

lack of personal jurisdiction; 5) 12(b)(1) or (6) Fed.R.Civ.Proc., dismissal of the claims against the individual defendants for failure to name them as prospective defendants in the proceeding before the Secretary of Labor, as required by the ADEA, 29 U.S.C. § 626(d). In addition, the defendants move pursuant to 28 U.S.C. § 1404(a) to transfer to the Central District of California, and to strike the plaintiff's demand for a jury trial.

## MOTION TO DISMISS

### a. *IMPROPER VENUE*

The Court has subject matter jurisdiction under 29 U.S.C. § 623(a)(1) and (2). Venue is governed by 28 U.S.C. § 1391(b), which provides that an action not founded solely upon diversity may be brought only in the judicial district in which all defendants reside, or in which the claim arose. As the two individual defendants are residents of California, venue is properly in the District for Maryland only if the claim arose here.

A claim generally arises where the injury occurs. *See generally,* 15 Wright, Miller & Cooper, Federal Practice and Procedure, § 3806 (1976); 1 Moore's Federal Practice, ¶ 0.142 [5.–2] at 1426 (2d Ed. 1977). However, because the injury in some types of suits typically occurs in more than one place, the court in an anti-trust case, *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.,* suggested a "weight of the contacts" test: venue is proper if significant sales causing substantial injury were made in the district in which venue is asserted, or some other overt act constituting a significant and substantial element of the offense occurred there. If, however, an insignificant element (such as one sale or a meaningless meeting) occurred in the district, venue does not lie. 291 F.Supp. 252, 260 (E.D.Pa. 1968).

It is not clear how far the weight of the contacts tests may be extended from anti-trust cases. A number of courts have used the test in trademark infringement cases; *e. g., Honda Associates, Inc. v. Noza-wa Trading Co.,* 374 F.Supp. 886 (S.D.N.Y. 1974). The test is appropriate for trademark infringement suits because the injury occurs in every district in which an infringing product is sold. However, the test need not be extended to suits charging age discrimination in employment, since that injury typically occurs in the one district in which the plaintiff lost, or was unable to obtain, employment. One court did apply the weight of the contacts test to an ADEA action, but without discussing whether the test was appropriate to the ADEA. *Weil v. New York State Department of Transportation,* 400 F.Supp. 1364 (S.D.N.Y.1975). In addition, the facts of that case were peculiarly similar to anti-trust and trademark infringement cases: it was a class action brought by the plaintiffs working in numerous judicial districts in New York, against the state as an employer. In the case before this Court, the alleged injury occurred only in Maryland, where the plaintiff lives and worked. The basic test is therefore appropriate: the cause of action arises and venue lies in the district in which the injury occurs.

Finally, even under the weight of the contacts test, the fact that the decision to discharge the plaintiff was made in California does not defeat venue in Maryland. Under the test as initially delineated in *Philadelphia Housing,* a significant and substantial, if not essential, element of the cause of action—the loss of the plaintiff's employment—occurred in Maryland.

### b. *FAILURE TO EXHAUST STATE CLAIMS*

29 U.S.C. § 633(b) provides that, where the alleged unlawful act took place in a state which prohibits age discrimination in employment, " . . . no suit may be brought under § 626 of this title before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated: . . . ." The plaintiff has submitted with his answer to the defendants' motion to dismiss two letters which demonstrate that he has met this

requirement, one from the State of Maryland Commission on Human Relations, and one from the State of California Fair Employment Practice Commission. Each has rejected his state discrimination claim for lack of jurisdiction.

### c. PUNITIVE DAMAGES

■ 29 U.S.C. § 626 provides that the ADEA shall be enforced in accordance with 29 U.S.C. § 216(b) and 217 (the enforcement provisions of the Fair Labor Standards Act [FLSA]). Section 216 provides for relief in the form of unpaid minimum wages, unpaid overtime compensation, liquidated damages, attorney's fees and costs. Section 626 of the ADEA restricts liquidated damages to cases of willful violation, and provides that the court may grant such legal and equitable relief as will effectuate the purposes of the ADEA. The Act does not mention compensatory or punitive damages.

The great weight of authority holds that punitive damages are not recoverable under the ADEA. While the Act specifically provides for back pay and an equal, additional amount for liquidated damages for willful violation, it does not specify punitive damages, raising the reasonable inference that Congress chose not to provide for punitive damages. *Hannon v. Continental National Bank,* 427 F.Supp. 215 (D.Colo.1977). Nor should they be awarded as a legal or equitable remedy to effectuate the purposes of the Act. The requirement in § 626(d) that a plaintiff bring a complaint with the Secretary of Labor before suing in federal court, so that the Secretary can attempt a conciliation between the parties, manifests a congressional purpose of promoting administrative mediation over judicial action. A threat of punitive damages would hinder rather than promote conciliation. *Platt v. Burroughs Corp.,* 424 F.Supp. 1329 (E.D.Pa. 1976). In addition, since administrative agencies do not generally award pain and suffering or punitive damages, it is reasonable to assume that had Congress desired plaintiffs to receive these damages it would have given the Secretary of Labor some guidance in awarding them. *Rogers v.*

*Exxon Research and Engineering Co.,* 550 F.2d 834 (3d Cir. 1977); *Fellows v. Medford Corp.,* 431 F.Supp. 199 (D.Or.1977). Finally, Congress provided a form of punishment to deter age discrimination without discouraging conciliation by specifying liquidated damages for willful violation of the Act. The double damages for willful violation acts as a substitute for punitive damages. *Looney v. Commercial Union Assurance Cos.,* 428 F.Supp. 533 (E.D.Mich.1977). The one case allowing punitive damages in an ADEA action does not mention any of these considerations. *Murphy v. American Motors Sales Corp.,* 410 F.Supp. 1403 (N.D.Ga. 1976). Punitive damages are unavailable in actions for violation of the ADEA.

### d. FAILURE TO NAME INDIVIDUAL DEFENDANTS IN PROCEEDINGS BEFORE THE SECRETARY OF LABOR

■ 29 U.S.C. § 626(d) provides that:
No civil action may be commenced by any individual under this section until the individual has given the Secretary not less than sixty-days' notice of an intent to file such action. . . . Upon receiving a notice of intent to sue, the Secretary shall promptly notify all persons named therein as prospective defendants in the action and shall promptly seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion.

There has been little litigation of the issue of notice required by this section. However, procedural interpretations of Title VII may be utilized to interpret the ADEA in view of the almost identical language and similar purpose of the two statutes. *Gabriele v. Chrysler Corp.,* 416 F.Supp. 666 (E.D.Mich.1976), which considered the identical requirements of state action before judicial action. To sue any defendant in federal court under Title VII, 42 U.S.C. § 2000e-5(f), the plaintiff must have named the defendant in the proceeding before the Commission. *Mickel v. South Carolina State Employment Service,* 377 F.2d 239 (4th Cir. 1967), *cert. denied,* 389 U.S. 877, 88

S.Ct. 177, 19 L.Ed.2d 166 (1967). The purpose of the notice requirement is to afford the Secretary of Labor the opportunity to negotiate a conciliation between the plaintiff and the prospective defendant(s). *Hochstadt v. Worcester Foundation for Experimental Biology, Inc.,* 425 F.Supp. 318 (D.Mass.1976), aff'd, 545 F.2d 222 (1st Cir. 1976). Therefore, notice is sufficient if made to the defendant's agent, or to some party who has substantial, if not complete, identity with the party named in the administrative complaint—*i. e.,* to the persons with whom the Secretary would negotiate, or persons who would or should know of the named defendant's conduct. *Chastang v. Flynn and Emrich Co.,* 365 F.Supp. 957 (D.Md.1973); *Hochstadt v. Worcester Foundation for Experimental Biology, Inc., supra; Hanshaw v. Delaware Technical and Community College,* 405 F.Supp. 292 (D.Del. 1975). Mere employment by the named defendant is an insufficient identity of interest. *Scott v. University of Delaware,* 385 F.Supp. 937 (D.Del.1974). This exception to the strict notice requirement has been recognized in an ADEA suit as well. *Sartin v. City of Columbus Utilities Comm'n.,* 421 F.Supp. 393 (N.D.Miss.1976).

▇▇▇ The burden of proving jurisdictional facts is upon the plaintiff. *Holfield v. Power Chemical Co., Inc.,* 382 F.Supp. 388 (D.Md.1974). The plaintiff does not allege that the individuals were named in the action brought before the Secretary of Labor. Rather, he suggests that the notice to Bowmar was sufficient notice to the individual defendants. However, nothing in the complaint or the affidavit submitted with the plaintiff's reply to the motions to dismiss indicates how either individual defendant, Jachino (President of Bowmar) or Campbell (National Sales Manager), is sufficiently identified with the corporate defendant for notice to one to constitute notice to the others. The plaintiff does not allege that the corporation is so small that the President and National Sales Manager would necessarily see the notice sent to the corporate defendant, nor that the individual defendants are the persons with whom the Secretary would negotiate, nor that they

had actual notice of the proceeding. The plaintiff, therefore, has failed to sustain his burden of proving that the two individual defendants come within the exception to the strict notice requirements of the ADEA.

The plaintiff requests that he be given additional time to complete discovery to prove the necessary substantial connection between the notified and unnotified defendants before this Court decides to dismiss against the individual defendants. While *Hanshaw v. Delaware Technical and Community College, supra,* and *Tippett v. Liggett and Myers Tobacco Co.,* 316 F.Supp. 292 (M.D.N.C.1970), suggest that a time extension may be permissible, the question is mooted by other findings noted herein.

e. *LACK OF PERSONAL JURISDICTION OVER THE INDIVIDUAL DEFENDANTS*

▇▇▇ Jurisdiction over individual officers or employees of a corporation may not be predicated upon jurisdiction over the corporation, absent activities by the individuals sufficient to subject them to a long arm statute. *Wilshire Oil Co. of Texas v. Riffe,* 409 F.2d 1277 (10th Cir. 1969). The Maryland Long Arm Statute, Md.Ann.Code, CJ § 6–103 provides:

(b) A court may exercise personal jurisdiction over a person who directly or by an agent:

(1) transacts any business or performs any character of work or service in the state;

(2) contracts to supply goods, food, services or manufactured products in the state;

(3) causes tortious injury in the state by an act or omission in the state;

(4) causes tortious injury in the state or outside of the state by an act or omission outside the state, if he regularly does or solicits business, engages in any other persistent course of conduct in the state, or derives substantial revenue from goods, food, services or manufactured products used or consumed in the state;

(5) has an interest in, uses, or possesses real property in the state; or (6) contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the state at the time the contract is made, unless the parties otherwise provide in writing.

Jachino and Campbell state in their affidavits that neither lives in Maryland, owns, possesses or uses real property in Maryland; and that the only contacts each has had in the state are as follows: Jachino spent one week in Maryland nine years ago on business that did not concern the plaintiff; Campbell attended some meetings in Maryland prior to February 1976, and met with the plaintiff in Maryland on February 21, 1976, but has not been in Maryland since that date. Consequently, only subsection (b)(4) of the Long Arm Statute is applicable to these defendants.

■ The plaintiff has the burden of proving, or at least making a *prima facie* showing of, the jurisdictional facts to show that the individual defendants regularly do or solicit business in Maryland, engage in another persistent course of conduct in the state, or derive substantial revenue from goods, services or manufactured products used or consumed in the state. *Weller v. Cromwell Oil Co.*, 504 F.2d 927 (6th Cir. 1974); *Holfield v. Power Chemical Co.*, 382 F.Supp. 388 (D.Md.1974). The plaintiff alleges that the individual defendants have sufficient contacts with the state, but does not specify such contacts. He does not specifically allege any contacts other than those admitted in the defendants' affidavits; nor does he allege that either defendant derives substantial revenue from products used or sold in Maryland. Therefore, before this Court can assert personal jurisdiction over the defendants Jachino and Campbell, the contacts specified in their affidavits must constitute regularly doing or soliciting business in Maryland.

■ It is clear that the one week Jachino spent in Maryland nine years ago is not "regular" or "persistent" conduct of

any kind. Plaintiff has thus failed to allege or prove the facts necessary to establish jurisdiction over him. The Court need not reach the question of whether Campbell's contacts with Maryland are sufficient in number under the statute, since Campbell was acting on corporate business during those meetings. Contacts as a corporate representative on corporate business do not give rise to personal jurisdiction over the individual. *Wilshire Oil Co. of Texas v. Riffe*, 409 F.2d 1277 (10th Cir. 1969); *accord, Lehigh Valley Industries, Inc. v. Birenbam*, 389 F.Supp. 798 (S.D.N.Y.1975), *aff'd*, 527 F.2d 87 (2d Cir. 1975).

■ The courts have recognized an exception to this general rule: where the individual is conducting personal activities behind the shield of a non-viable corporation, the court may pierce the corporate veil and thereby predicate personal jurisdiction over the individual on personal jurisdiction over the corporation. 4 Wright and Miller, Federal Practice and Procedure, § 1069 (1976 Supp. at 31). The plaintiff asserts that since the decision-making of the corporation is equivalent to the decision-making of the individual defendants, it would not offend traditional notions of fair play and substantial justice to attribute corporate acts to the individuals. However, the plaintiff alleges no facts to show that the corporation is merely a facade for the defendants' individual activities, and the cases he cites are clearly distinguished on their facts. In *Harris v. Arlen Properties, Inc.*, 256 Md. 185, 260 A.2d 22 (1969), the individual defendant, Cohen, was the president of the subsidiary corporation and a partner in the parent corporation. Since the sole purpose of the subsidiary corporation was to hold title for the parent corporation, the court pierced the corporate veil and, under the Uniform Partnership Act, found jurisdiction over the parent to constitute personal jurisdiction over Cohen as an individual. The case is inapposite since the court based its holding on the involvement of parent and subsidiary corporations, under partnership law. 256 Md. at 201, 260 A.2d 22. In *Topik v. Catalyst Research Corp.*, 339

F.Supp. 1102 (D.Md.1972), the court found that the special circumstances of the case militated against the application of the general rule, and held only that traditional notions of fair play and substantial justice seem to allow stockholders of a corporation to sue directors for breach of fiduciary duty in the home state of the corporation, at least so long as the directors regularly came into that state to meet and deal with the stockholders at annual meetings. The plaintiff has not alleged any facts bringing his suit within this limited rule. Finally, in *Holfield v. Power Chemical Co., Inc.*, 382 F.Supp. 388 (D.Md.1974), this Court held that where the individual defendant is the president, board member and majority stockholder in a corporation whose sole function is to carry out the defendant's personal scheme for selling hair spray, the Court may pierce the corporation veil and attribute the jurisdictional acts of the corporation to the individual defendant. Again, the plaintiff has alleged nothing to show that Bowmar is such a facade for the activities of the defendants Campbell and Jachino.

The plaintiff requests that the decision on this motion be postponed until after completion of discovery, citing *Johnson v. Helicoptor & Airplane Services Corp.*, 389 F.Supp. 509 (D.Md.1974). However, in that case the defendant had submitted a 12(b)(6) motion to dismiss, accompanied by affidavits; since that motion must be treated as a motion for summary judgment, the plaintiff was allowed to continue discovery in order to present materials pertinent to a Rule 56 summary judgment. The motion before this Court is a 12(b)(2) motion to dismiss, which is not accorded summary judgment treatment even if accompanied by matters outside the pleadings. Fed.R. Civ.Proc. 12(b); *see Johnson v. RAC Corporation*, 491 F.2d 510 (4th Cir. 1974). The plaintiff offers no reason why he should be allowed further opportunity to present the jurisdictional facts required to demonstrate personal jurisdiction over the individual defendants, and has failed to make a *prima facie* showing of personal jurisdiction over Jachino and Campbell.

## MOTION TO TRANSFER

The defendants move for a transfer to the Central District of California, under 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The court has great discretion in deciding whether to grant a transfer, *Solomon v. Continental American Life Ins. Co.*, 472 F.2d 1043 (3d Cir. 1973), and the defendant must sustain a heavy burden of proof to disturb the plaintiff's choice of forum. *Levin v. Mississippi River Corp.*, 289 F.Supp. 353 (S.D.N.Y.1968); *Danto v. Little, Inc.*, 316 F.Supp. 1350 (E.D. Mich.1970). In *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the Supreme Court specified various factors to be considered on a § 1404 motion to transfer. The factors relevant to the plaintiff's position are that 1) the District of Maryland is his chosen forum, 2) he resides in Maryland, 3) his sole witness (himself) resides in Maryland, and 4) he has sworn by affidavit that he is financially unable to sue in California. Four factors support the defendants' motion: 1) of the five witnesses the defendants expect to call, four reside in California, while one lives in New Jersey; 2) three of the four California witnesses are key witnesses, as is the New Jersey witness; and 3) all the relevant documents are in California, the site of the corporate headquarters. The defendants also allege that trial in Maryland would subject them to vexation by possibly requiring them to defend one suit in Maryland and another in California, brought by the plaintiff against the individual defendants, should this Court grant their motion to dismiss as against them. However, it is clear from the plaintiff's affidavit that he cannot afford to bring any suit in California. On balance, the plaintiff would be just as inconvenienced by transfer to California as the defendants are inconvenienced by trial in Maryland. Equal inconvenience does not sustain the movant's burden of·

proof. *Levin v. Mississippi River Corp.,* 289 F.Supp. 353 (S.D.N.Y.1968); *Scott Paper Co. v. Scott's Liquid Gold,* 374 F.Supp. 184 (D.Del.1974).

## MOTION TO STRIKE THE DEMAND FOR A JURY TRIAL

 The defendants move to strike the plaintiff's demand for a jury trial on the ground that the case presents no issue triable by right by a jury. Since the ADEA does not specifically provide for trial by jury, the plaintiff may demand a jury trial only if that right is protected by the Seventh Amendment. In actions brought pursuant to a statute, the Seventh Amendment recognizes a right to a jury trial if the statute creates legal rights and remedies enforceable in an action for damages. *Curtis v. Loether,* 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974). In *Ross v. Bernhard,* 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970), the Supreme Court set forth a three-prong test for deciding whether an action is legal or equitable: 1) whether it would have been tried in equity or law before their merger; 2) whether the relief requested is legal or equitable in nature; and 3) whether the relief requested is beyond the practical limitations of a jury. Monetary relief is not legal per se; it may be equitable if it is an integral part of the primary equitable relief granted, or if the court has discretion in awarding it. *Curtis v. Loether, supra,* 415 U.S. at 196, 197, 94 S.Ct. 1005. Where issues of law and equity are intertwined in one case, the parties are entitled to a jury trial on those issues which meet the *Ross* three-prong test. *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962).

 The plaintiff demands reinstatement, back pay with interest, punitive damages, liquidated damages, restoration of his pension and retirement rights, and attorney's fees and costs. Since breach of the ADEA does not give rise to punitive damages, there is no issue of a jury trial on punitive damages. Nor is there a right to a jury trial on the award of attorney's fees ·and costs, as the plaintiff concedes in his memorandum in opposition to the defendants' motion to strike. Similarly, reinstatement is unquestionably equitable relief, and does not give rise to a right to trial by jury. *Cleverly v. Western Electric Co.,* 69 F.R.D. 348 (W.D.Mo.1975). Three issues remain: whether back pay, liquidated damages, or restoration of pension rights are legal or equitable in nature.

As to back pay, the reasoning of the Sixth Circuit Court of Appeals in *Morelock v. N. C. R. Corp.,* 546 F.2d 682 (1976), is persuasive: back pay is actually relinquishment of funds wrongfully withheld, and as such is an integral part of the basic equitable relief of reinstatement. However, the Fourth Circuit Court of Appeals has ruled that, because the ADEA specifically provides for legal and equitable relief, and because ADEA claims are analogous to the legal actions of contract and tort, back pay under the ADEA is monetary and legal relief, involving a right to trial by jury. *Pons v. Lorillard,* 549 F.2d 950 (1977).

The courts are also split over whether liquidated damages are legal or equitable in nature. The majority of the cases holds that liquidated damages under the ADEA are equitable. These cases reason that, although § 7(b) of the ADEA, as printed in 29 U.S.C. § 626(b), provides that the Act is to be enforced in accordance with §§ 16(b) and 17 of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b) and § 217 (providing for back pay and liquidated damages), the original language of § 7(b) of the ADEA, in 81 Stat. 604, refers to FLSA §§ 16(b) and 17 *"as amended."* The FLSA was amended in 1947 by the Portal-to-Portal Act, 29 U.S.C. § 260, which provides:

. . . if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was *in good faith* and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, *in its sound discretion,* award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title. (Emphasis added.)

The Portal-to-Portal Act makes the award of liquidated damages under the ADEA wholly discretionary and therefore equitable in nature. *Hays v. Republic Steel Corp.,* 531 F.2d 1307 (5th Cir. 1976); *Hannon v. Continental National Bank,* 427 F.Supp. 215 (D.Colo.1977); *Lonney v. Commercial Union Assurance Cos.,* 428 F.Supp. 533 (E.D.Mich. 1977); *Chilton v. National Cash Register Co.,* 370 F.Supp. 660 (S.D.Ohio 1974); *accord, Combes v. Griffin Television, Inc.,* 421 F.Supp. 841 (W.D.Okl.1976).

Other courts, however, have argued more persuasively that liquidated damages under the ADEA is a legal remedy. Section 7(b) of the ADEA, 29 U.S.C. § 626(b), provides for liquidated damages for the willful breach of the Act. This provision would be superfluous if the Act is construed to include the Portal-to-Portal language giving the court discretion not to grant damages where the employer can show that he acted in good faith. *Cleverly v. Western Electric Co.,* 69 F.R.D. 348 (W.D.Mo.1975); *Fellows v. Medford Corp.,* 431 F.Supp. 199 (D.Or. 1977); *Rechsteiner v. Madison Fund,* 75 F.R.D. 499 (D.Del.1977). In addition, § 7(e) of the original Act, 29 U.S.C. § 626(e), specifies that "Sections 6 and 10 [29 U.S.C. §§ 255 and 259] of the Portal-to-Portal Act of 1947 shall apply to actions under this Act." Since the ADEA specifically incorporates two sections of the Portal-to-Portal Act but does not mention § 11 (29 U.S.C. § 260, making liquidated damages discretionary), the Court must infer that liquidated damages were not intended to be discretionary under the ADEA. In addition, liquidated damages are legal damages under the three-prong *Ross* test: they are legal in nature, they have traditionally been granted in legal actions, and they are often awarded by juries. *Cleverly v. Western Electric Co.,* 69 F.R.D. 348 (W.D.Mo.1975).

As to the demand for restoration of retirement benefits, the plaintiff cites three cases in which the court recognized a right to trial by jury. However, in all three of these cases, the plaintiff demanded monetary damages for lost benefits, including pension benefits. *Chilton v. National Cash Register Co.,* 370 F.Supp. 660 (S.D.Ohio 1974); *Combes v. Griffin Television, Inc.,* 421 F.Supp. 841 (W.D.Okl.1976); *Fellows v. Medford Corp.,* 431 F.Supp. 199 (D.Or.1977). The plaintiff in this case requests the non-monetary and non-legal relief of restoration of his pension status prior to his discharge, an equitable remedy for which he is not entitled to a jury trial. In summary, the plaintiff is entitled to a trial by jury under the Seventh Amendment on the issues of back pay and liquidated damages, but not on the issues of reinstatement, punitive damages, restoration of his pension rights, or attorney's fees and costs.

For the aforementioned reasons, it is this 25th day of January, 1978, by the United States District Court for the District of Maryland, ORDERED:

1. That the defendants' motion to dismiss the plaintiff's suit against the defendants Robert J. Jachino and George Campbell for lack of personal jurisdiction be, and the same is, hereby GRANTED;

2. That the defendants' motion to dismiss the plaintiff's claim for punitive damages under the Age Discrimination in Employment Act be, and the same is, hereby GRANTED;

3. That the defendants' motion to dismiss the plaintiff's claims against the defendant Bowmar Publishing Company otherwise be, and the same is, hereby DENIED;

4. That the defendants' motion to transfer under 28 U.S.C. § 1404(a) be, and the same is, hereby DENIED;

5. That the defendants' motion to strike the plaintiff's demand for jury trial on the issues of reinstatement, punitive damages, restoration of the plaintiff's pension rights, and attorney's fees and cost be, and the same is hereby GRANTED;

6. That the defendants' motion to strike the plaintiff's demand for jury trial on the issues of back pay with interest and liquidated damages be, and the same is, hereby DENIED; and

7. That a copy of this Memorandum and Order be mailed to L. Robert Evans, Es-

quire, Counsel for the plaintiff, and to Leonard E. Cohen, Esquire, Monte Fried, Esquire, and Robert B. Levin, Esquire, Counsel for the defendants.