**Stella PAULS, Plaintiff,**

v.

**ELAINE REVELL, INC., et al., Defendants.**

No. 83 C3943.

United States District Court, N.D. Illinois, E.D.

Sept. 20, 1983.

---

John Cushing, Ambrose & Cushing, P.C., Chicago, Ill., for plaintiff.

Scott A. Creswell, Cary S. Fleischer and Bruce J. Baker, Moss, Miller & Josephson, Ltd., Chicago, Ill., for defendants Herman and James Hoke.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Stella Pauls ("Pauls") sues Elaine Revell, Inc. ("Revell") and its Chairman Herman Hoke and President James Hoke (collectively "Hokes"), claiming she was dismissed by Revell because of her age and sex in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–34, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e–17.[1] Hokes now move for dismissal pursuant to Fed.R.Civ.P. ("Rule") 12(b)(1) and 12(b)(6), asserting lack of subject matter jurisdiction. For the reasons stated in this memorandum opinion and order their motion is denied.

### Complaint Allegations

Pauls is a 50-year-old woman who held various managerial positions at Revell from March 17, 1976 until August 27, 1982, when she was discharged. Following her termination Pauls filed a charge of unlawful sex and age discrimination with the Equal Employment Opportunity Commission ("EEOC"). As its factual allegations reveal, that EEOC charge plainly identified Hokes as the ones responsible for her allegedly discriminatory dismissal but named only Revell as the "Respondent":[2]

I. On 8/31/82, Respondent terminated me from my position as Vice President. I began working for Respondent March 17, 1976. I was denied Profit Sharing Benefits of $5,330.80.

II. The reason given by Mr. Herbert Hoke, Chairman, age 60, and James Hoke, President, age 38, for termination, was that Respondent was on the verge of bankruptcy and as of right now, they were letting me go. The reason given for denial of benefits was a change in Company Profit Sharing Policy.

III. I believe I have been discriminated against because of my age, 49, in that:

A) In September of 1982, Respondent filled the position I held as Vice-President, with Mike (last name unknown), age 32.

B) Respondent has recently terminated employees in the protective age (40–70) from Management positions. Their names are: Delores, age 58; Audrey, over 40, and Kate, over 50. In addition, Florence, Bookkeeper, over 40.

C) I was denied the Profit Sharing Benefits of $5,330.80.

D) Respondent's Profit Sharing Policy states that employees shall receive 100% of the benefits, when I began in March of 1976.

E) Respondent implemented a new Profit Sharing Benefits policy July 1, 1976. At the time of my termination, 8/31/82, Respondent only granted me 60% of my Profit Sharing Benefits.

On May 18, 1983 EEOC issued Pauls a Notice of Right To Sue, entitling her to seek redress in federal court within 90 days. Pauls timely filed this civil action.

### Motion To Dismiss

Hokes argue Pauls' failure to name them in her EEOC grievance, as required by Sec-

---

1. All Title VII and ADEA citations will simply take the form "Section—" (referring to the numbering in Titles 42 and 29, respectively). Because the numbers are distinctively different, no confusion should result.

2. Standing alone, Complaint ¶ 6 arguably suggests the EEOC charge named Hokes as well: "Plaintiff has filed charges of unlawful discrimination on the basis of age and sex against the Defendants in the Equal Employment Opportunity Commission (EEOC) in Chicago, Illinois (copy attached hereto as Exhibit A)." But that inference is foreclosed by the EEOC charge itself, which was incorporated as part of the Complaint.

tion 2000e–5(f)(1) [3] and Section 626(d), [4] deprives this Court of subject matter jurisdiction over them. Analysis of that contention first requires a brief digression into the nature of those preconditions for bringing suit.

Until just last year federal courts, including our Court of Appeals, treated the Section 2000e filing requirements as *jurisdictional* prerequisites. *See, e.g., Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U.A.,* 657 F.2d 890 (7th Cir. 1981). But in *Liberles v. County of Cook,* 709 F.2d 1122, 1125 (7th Cir.1983) our Court of Appeals retracted that position, choosing instead to characterize those Title VII provisions as "conditions precedent" under Rule 9(c): [5]

> In *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), the Court held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." 455 U.S. at 393, 102 S.Ct. at 1132 (footnote omitted). *Zipes'* basis is the statutory language of 42 U.S.C. § 2000e–5(f)(3) (1976), the legislative history, and the fact that "a technical reading [of Title VII] would be 'particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process,' [*Love v. Pullman Co.,* 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972)] at 527 [92 S.Ct. at 619]." 455 U.S. at 397, 102 S.Ct. at 1134. Further, by holding that timely filing is not jurisdictional, the Court "honor[ed] the remedial purpose of the legislation as a whole without negating the particular

purpose of the filing requirement, to give prompt notice to the employer." *Id.* [455 U.S.] at 398, 102 S.Ct. at 1135. Another purpose of the filing requirements is to secure voluntary compliance with the law. *Bowe v. Colgate-Palmolive Co.,* 416 F.2d 711, 719 (7th Cir.1969).

> We agree with the reasoning of *Jackson v. Seaboard Coast Line RR Co.,* 678 F.2d 992, 999–1010 (11th Cir.1982). In *Jackson* the court carefully reviewed the case law and legislative history of Title VII and concluded that it could "discern no rational basis for treating those [Title VII action preconditions, *i.e.,* the requirements of 42 U.S.C. § 2000e–5 (1976)] that have not been considered from those that implicitly or explicitly have been held not to be jurisdictional." 678 F.2d at 1009 (footnote omitted). *Accord Pinkard v. Pullman-Standard,* 678 F.2d 1211, 1216–18 (5th Cir.1982). Further, if a defendant does not deny specifically and with particularity, as required by Fed.R.Civ.P. 9(c), the satisfaction of the Title VII lawsuit preconditions, the defendant cannot later assert that a condition precedent to the lawsuit has not been met. *Jackson,* 678 F.2d at 1010.

*Liberles'* analysis applies with equal force to Section 626(d), for ADEA procedural provisions generally receive the same interpretation as their Title VII counterparts. *See Goodman v. Board of Trustees of Community College District 524,* 498 F.Supp. 1329, 1336 (N.D.Ill.1980) (finding exception to Section 2000e–5(f)(1) applicable to Section 626(d)); *Quinn v. Bowmar Publishing Co.,* 445 F.Supp. 780, 784–85 (D.Md.1978) (same).

Because the administrative charging requirements of Title VII and ADEA are

---

**3.** That provision states:
> Within 90 days after the giving of such notice [of intent to sue] a civil action may be brought against the respondent named in the charge.

**4.** That provision reads:
> No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Commission. . . . Upon receiving such charge, the Commission shall promptly notify all persons named in

such charge as prospective defendants in the actions. . . .

**5.** *Liberles* was decided over a month before Hokes' motion and supporting memorandum were filed, though the advance sheet reporting the opinion issued about a month after Hokes' submission. Once again the research value of a retrieval system like Lexis is obvious, for Hokes could not have advanced their outmoded jurisdictional argument had they known of *Liberles.*

non-jurisdictional, Pauls' satisfaction of those conditions precedent can be challenged under Rule 12(b)(6) (or Rule 56) but not Rule 12(b)(1).[6] This Court will therefore evaluate Hokes' motion under Rule 12(b)(6) standards, accepting as true the well-pleaded Complaint allegations and any reasonable inferences favorable to Pauls.

Hokes correctly point out the general rule that a defendant can be sued under Title VII or ADEA only after he has been administratively charged. But that rule has been tempered by several exceptions, at least two of which are apposite here.[7] For example, in *Eggleston,* 657 F.2d at 905, our Court of Appeals announced the rule should give way when the twin purposes of the EEOC charge are fulfilled:

> 1. to notify the accused party of the alleged violation and
>
> 2. to insure all parties involved have an opportunity to participate in EEOC's conciliation proceedings (which are designed to secure voluntary compliance with Title VII).

Specifically *Eggleston* teaches in that respect:

> [W]here an unnamed party has been provided with adequate notice of the charge, under circumstances where the party has been given the opportunity to participate in conciliation proceedings aimed at voluntary compliance, the charge is sufficient to confer jurisdiction over that party.

That exception is plainly applicable, for the factors that convinced *Eggleston* to invoke the exception carry equal (if not greater) weight here. *Eggleston* involved a challenge to the admission requirements of a plumbers' apprenticeship program operated by the defendant Joint Apprenticeship

Committee Local No. 130 U.A. ("JAC"), an unincorporated association allegedly controlled by the defendant Plumbers' Local Union No. 130 ("Local 130"). *Eggleston* plaintiffs' EEOC charge had named Local 130 but not JAC. *Eggleston,* 657 F.2d at 906, emphasis in original, found the charge had sufficiently apprised JAC of the alleged violation to meet the "notice" prong of the exception:

> Our reference to the record convinces us that the JAC *was* sufficiently apprised of the charge to meet this notice requirement. We begin by noting that five members of the ten person JAC board have been appointed by Local 130. These five individuals, as of the date of Rose's 1975 charge, were *all* serving as officers within Local 130, while simultaneously serving on the JAC. Their positions within Local 130 include respectively: the business manager, the business representative, an executive board member, the vice-president, and the recording secretary. Moreover, the JAC coordinator has served as an elected officer in Local 130 since 1966, and has signed affidavits and other pleadings in this litigation in the JAC's behalf.
>
> The charge itself, which named Local 130, clearly complained of discriminatory exclusion from the apprenticeship program. Given that the JAC administers the only apprentice program of record, the charge was sufficient to apprise both the EEOC and the JAC of the alleged discriminatory practices.

Such reasoning is even more compelling here:

1. Hokes themselves are the most important officers in Revell.

---

**6.** Technically Hokes' motion to dismiss may be premature because they have not yet filed an answer that complies with Rule 9(c)'s imperative:

> A denial of performance or occurrence [of conditions precedent] shall be made specifically and with particularity.

But at least in the circumstances of this case, this Court perceives no reason to adopt such a technical reading of Rule 9(c). Certainly Hokes' motion to dismiss comports with the thrust of Rule 9(c) by apprising Pauls "specifically and with particularity" of the condition precedent in dispute.

**7.** Again, while those exceptions have evolved largely in the Title VII context, they have been transplanted in ADEA soil. *See, e.g., Goodman,* 498 F.Supp. at 1336. Hokes properly do not cavil at such borrowing of Title VII precedent.

2. Pauls' EEOC charge not only focuses on conduct taken by Hokes, but it expressly identifies them as the ones through whom Revell effected the allegedly discriminatory dismissal.

In finding JAC had been afforded ample opportunity to conciliate, *Eggleston* reasoned (657 F.2d at 907, footnote omitted):

Upon balancing these [policy] considerations, we find that the JAC has been presented with a sufficient opportunity to conciliate. As soon as the JAC had notice of the charge, either through its Local 130 members or through the JAC coordinator, nothing prevented it from attempting to resolve the alleged discrimination in an amicable manner. Any opportunity to effect voluntary compliance of Local 130 by the EEOC would have necessarily involved contact with the JAC, its coordinator, and its other members. *Compare Kelly v. Richland School District 2,* 463 F.Supp. 216, 218–21 (D.S.C. 1978); *Wong v. Calvin,* 87 F.R.D. 145, 149 (N.D.Fla.1980). Thus, the JAC was presented with an adequate opportunity in this regard. Moreover, if a party has a close relationship with a named respondent, as does the JAC, and has actual notice of the EEOC charge, as it is likely the JAC has had, to the extent that the JAC could have participated in conciliation efforts, the JAC "should not be heard to cry 'foul' when later made a defendant in a suit...." *Stevenson v. International Paper Co., supra,* 432 F.Supp. [390] at 397–98.

*Eggleston (id.)* also noted the futility of affording JAC a greater opportunity for conciliation in view of Local 130's "unmatched ferocity" in fighting the lawsuit and JAC's refusal to settle after it had been specifically named in a later-filed EEOC charge. Again those considerations have persuasive force here:

1. Once Hokes were notified of the EEOC charge, they could have attempted to reach a settlement with Pauls.

2. Any EEOC initiative to achieve Revell's voluntary compliance would have necessarily embraced Hokes, for they (a) control Revell's employment practices and (b) were the ones who ordered Pauls' termination.

3. In all likelihood, enhancing Hokes' opportunity to conciliate would have been futile in light of the persistent refusal of both Revell and Hokes (after the latter learned of the EEOC charge) to resolve their dispute with Pauls.

In sum *Eggleston,* 657 F.2d at 906, requires the retention of Hokes in this case, for they were "sufficiently named or alluded to in the factual statement [of the EEOC charge] ... to be joined." [8]

As if that were not enough (and it is), the "substantial identity" exception first articulated in *McDonald v. American Federation of Musicians,* 308 F.Supp. 664, 669 (N.D.Ill. 1970) also renders Hokes amenable to suit. *McDonald* permitted suit against an uncharged union official who took the allegedly discriminatory action at issue because that official was "substantially identical" to

---

**8.** *Eggleston,* 657 F.2d at 907–08, also said its holding comported with the four-element test first enunciated in *Glus v. G.C. Murphy Co.,* 562 F.2d 880, 888 (3d Cir.1977):

1. Whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint.

2. Whether, under the circumstances, the interests of a named party are so similar to the unnamed parties' that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings.

3. Whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party.

4. Whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

For the sake of brevity this Court will not belabor the obvious: Pauls' failure to name Hokes in her EEOC charge is excusable under the *Glus* formulation—at least at the pleading stage—for the same reasons the omission in the *Eggleston* EEOC charge was deemed innocuous. And to the extent application of the *Eggleston* and *Glus* tests to this case yield different conclusions, the former approach obviously governs in this Circuit.

the charged union. As *McDonald* makes plain, the availability of its exception hinges on the extent to which the entity-defendant acted through the unnamed individual defendant in undertaking the challenged practices.[9] *Accord, Goodman,* 498 F.Supp. at 1333 (allowing plaintiff to proceed against unnamed college president who had merely recommended the allegedly discriminatory appointment to the named board of trustees); *cf. Quinn,* 445 F.Supp. at 785 ("Mere employment by the named defendant is an insufficient identity of interest").

That "substantially identical" doctrine could not be more directly on point here, for Hokes were wholly responsible for Pauls' discharge. Accordingly, both *Eggleston* and *McDonald* excuse Pauls' failure to name Hokes in her EEOC charge.[10]

#### Conclusion

Hokes' motion to dismiss is denied. They are ordered to answer the Complaint on or before September 27, 1983.

---

**9.** *McDonald* is rooted in the same policy concerns that undergird the *Eggleston* approach. For this reason it is probably more accurate to regard the "substantially identical" exception as a specific application of the *Eggleston* formulation than as a conceptually distinct doctrine.

**10.** As already noted, Hokes' motion has been decided on the basis of the pleadings, not the present evidentiary record. But that motion would fare no better even were it directed to the evidentiary basis for Pauls' compliance with the conditions precedent to a Title VII and ADEA action. As the text discussion illuminates, the two pivotal factors underlying the denial of that motion—the close relationship between Revell and Hokes and the EEOC charges' explicit reference to those unnamed defendants as the culpable individuals—are undisputed *facts.* In the absence of any countervailing evidentiary showing by Hokes, Pauls' reliance on those facts satisfies her burden of proving her satisfaction of Title VII's and ADEA's administrative charging preconditions. *Cf. Silver v. Mohasco Corp.,* 497 F.Supp. 1, 4 (N.D.N.Y.1978) (refusing to apply "substantial identity" exception because evidence showed unnamed corporate officials who were partly responsible for the challenged conduct had not been notified by the EEOC or included in any EEOC conciliation proceeding).